Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
robl@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Attorneys for Plaintiffs and
the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEAN SHEIKH, JOHN KELNER, TOM MILONE, DAURY LAMARCHE, and MICHAEL VERDOLIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>Defendant. | No. 5:17-cv-02193-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:  October 25, 2018<br>Time:  9:00 a.m.<br>Judge:  Hon. Beth Labson Freeman<br>Dept.:  Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT ..................................................................................2

II.     STATEMENT OF ISSUES TO BE DECIDED .....................................................3

III.    STATEMENT OF RELEVANT FACTS ...............................................................3

        A.      Background facts ........................................................................................3

        B.      Plaintiffs and their claims .........................................................................4

        C.      Proceedings to-date ...................................................................................6

        D.      The Settlement ...........................................................................................7

                1.      Settlement Class definition, class period, and claims period ...................7

                2.      Relief to the Settlement Class............................................................7

                        a.      Generally .........................................................................7

                        b.      Direct payments to Settlement Class Members ...................8

                        c.      Non-Monetary Benefit...................................................8

                        d.      Secondary Distribution and Residual ..........................9

                3.      Notice, opt-out procedures, and release ..........................................9

                4.      Service awards and attorneys' fees, costs, and expenses......................10

IV.     ARGUMENT .......................................................................................................11

        A.      The Court should grant preliminary approval of the Parties' negotiated Settlement.....11

                1.      Negotiated class-action settlements are desirable.............................12

                2.      The Settlement meets the standards for preliminary approval. ......................12

                        a.      The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation. ...................................................13

                        b.      The Settlement bears no obvious deficiencies, including improper preferential treatment.................................................14

                        c.      The Settlement falls within the range of possible approval. .................15

        B.      The proposed Settlement Class merits provisional certification..................................17

1.   The Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy are met. ....................................................................................17

       a.   Numerosity ..........................................................................................18

       b.   Commonality .......................................................................................18

       c.   Typicality ............................................................................................19

       d.   Adequacy ............................................................................................19

2.   Common questions predominate, and a class action is the superior method to adjudicate Settlement Class Member claims. ...............................20

       a.   Common questions predominate. .......................................................21

       b.   Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class. .........................................21

C.   The Court should approve the proposed forms and methods of class Notice. ............21

D.   The Court should set a schedule toward final approval of the Parties' Settlement. ......22

V.   CONCLUSION ...........................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ...................................................................................................17

*In re Apple In-App Purchase Litig.,*
   2013 WL 1856713 (N.D. Cal. May 2, 2013) ...........................................................21

*Arnold v. Arizona Dep't of Pub. Safety,*
   2006 WL 2168637 (D. Ariz. July 31, 2006) ...........................................................13

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ..................................................................................13

*Burden v. SelectQuote Ins. Servs.,*
   2013 WL 1190634 (N.D. Cal. Mar. 21, 2013)..........................................11, 12, 16, 19

*In re: Cathode Ray Tube (CRT) Antitrust Litigation,*
   2016 WL 3648478 (N.D. Cal. July 7, 2016) .......................................................14, 16

*Chamberlan v. Ford Motor Co.,*
   402 F.3d 952 (9th Cir. 2005) ..................................................................................19

*Chavez v. WIS Holding Corp.,*
   2010 WL 11508280 (S.D. Cal. June 7, 2010) ........................................................12

*Chin v. RCN Corp.,*
   2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010) .......................................................15

*Churchill Village, L.L.C. v. GE,*
   361 F.3d 566 (9th Cir. 2004) ..................................................................................12

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ................................................................................................22

*Evon v. Law Offices of Sidney Mickell,*
   688 F.3d 1015 (9th Cir. 2012) ................................................................................19

*Franklin v. Kaypro Corp.,*
   884 F.2d 1222 (9th Cir. 1989) ................................................................................12

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1988) ..........................................................................*passim*

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS,*
   306 F.3d 842 (9th Cir. 2002) ..................................................................................18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund. v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ........................................................................21

*Marilley v. Bonham*,
    2012 WL 851182 (N.D. Cal. Mar. 13, 2012) .................................................18

*Mathein v. Pier 1 Imports (U.S.), Inc.*,
    2017 WL 6344447 (E.D. Cal. Dec. 12, 2017) ................................................12

*Nachsin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ........................................................................15

*Newman v. CheckRite Cal., Inc.*,
    1996 WL 1118092 (E.D. Cal. Aug. 2, 1996) ..................................................19

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..........................................................................15

*In re OSI Sys., Inc. Derivative Litig.*,
    2017 WL 5634607 (C.D. Cal. Jan. 24, 2017) .................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................22

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................................12

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................................13

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ..........................................................................21

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..........................................................................12

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..........................................................16

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2012 WL 5055810 (D. Minn. Oct. 18, 2012) .................................................14

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................*passim*

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004) ...............................11

MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004) .............................22

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004) .......................21, 22

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) .................................................. 12, 17

MANUAL FOR COMPLEX LITIGATION § 21.633 (4th ed. 2004) ...................................................... 17

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017)........................................11

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.13 (5th ed. 2017)................................. 13, 14

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.45 (5th ed. 2017)........................................13

PLEASE NOTE that on [ ], at 9:00 a.m., or as soon thereafter as may be heard in the courtroom of the Hon. Beth Labson Freeman, U.S. District Court for the Northern District of California, San Jose Division, Plaintiffs Dean Sheikh, John Kelner, Tom Milone, Daury Lamarche and Michael Verdolin will move, pursuant to Fed. R. Civ. P. 23(e), for an order:

1.     Preliminarily approving the Settlement[1] they have reached with the Defendant;

2.     Granting provisional certification of the Settlement Class, appointing the Plaintiffs as Settlement Class Representatives, and appointing Hagens Berman Sobol Shapiro LLP, by Steve W. Berman, Thomas E. Loeser and Robert F. Lopez, as Class Counsel for the Settlement Class;

3.     Approving the Parties' proposed Notice program and directing Notice of the proposed Settlement to the Settlement Class;

4.     Appointing KCC LLC, as the Settlement Administrator and directing it to carry out the duties assigned to it in the Settlement Agreement;

5.     Approving the Parties' proposed procedures for objecting to the Settlement and requesting exclusion;

6.     Staying all non-settlement-related proceedings in the this case pending final approval; and

7.     Setting the following schedule:

| | |
|---|---|
| Notice Date | No later than 45 days after Preliminary Approval |
| Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 14 days prior to the Objection and Exclusion Deadline (referenced below as the Objection and Opt-Out Deadlines) |
| Claims Deadline | 45 days after Notice Date |
| Opt-Out Deadline | 45 days after Notice Date |
| Deadline for Objection to Settlement | 45 days after Notice Date |
| Deadline for Objection to Motion for Attorneys' Fees, Costs, Expenses, and Service Awards | No later than 14 days after the Motion is filed |
| Motion for Final Approval | At least 10 days before Final Fairness Hearing |
| Responses to Objections | At least 10 days before Final Fairness Hearing |
| Final Fairness Hearing | Approximately 105 days after Preliminary Approval, subject to the Court's availability |

---

[1] Unless otherwise indicated by context, all capitalized terms in this motion refer to capitalized terms in the Parties' Settlement Agreement.

# I.   SUMMARY OF ARGUMENT

Plaintiffs, owners and lessees of Tesla Model X and Model S vehicles who purchased Tesla's Enhanced Autopilot ("Enhanced Autopilot") in connection with their Tesla vehicles, move for preliminary approval of a Settlement regarding Tesla's delay in releasing Enhanced Autopilot features with capabilities that corresponded to the schedule previously represented by Tesla.  The Settlement covers the claims of these owners and lessees in the United States and its territories.  It provides for a non-reversionary sum of $5,415,280.00 to satisfy these claims under the estimated payment table set forth in the Settlement Agreement; Class Representative Service Awards; and Plaintiffs' reasonable attorneys' fees, costs, and expenses as approved by the Court.  There is no claims process associated with this Settlement; all Settlement Class members will be sent a check for their portion of the Settlement fund.  The costs of administration and notice will be paid by Tesla in addition to the non-reversionary settlement fund.

The Parties reached this Settlement after vigorous investigation of the claims, mediation, and numerous follow-up conversations and exchanges of information, both mediated and direct.  Plaintiffs allege that Tesla's statements on its website and in its ordering process led them to believe that the Enhanced Autopilot features would be available upon delivery of their vehicles or within a short time thereafter.  While Tesla strongly denies any claim of wrongful conduct and contends that its statements were not misleading, Tesla has acknowledged that it took longer than it initially expected to roll out the features at issue, and accordingly agreed to this Settlement.

The Settlement appropriately reflects the realities and risks of litigation and is well calibrated to the facts of the case.  Cash payments to the Settlement Class Members thus reflect: (1) the differences in Tesla's representations at the time each Settlement Class Member purchased his or her vehicle; (2) the Enhanced Autopilot features available when each Settlement Class Member took delivery of his or her vehicle; and (3) the number of months each owned the vehicle before the remaining features became available.  Regarding Notice, the Parties have agreed to a strong, comprehensive program whose centerpiece is direct mailed notice to all potential Settlement Class Members.

As Plaintiffs demonstrate below, the Parties' Settlement Agreement is worthy of preliminary approval and presentation to the proposed Settlement Class.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Should the Court preliminarily approve the Parties' Settlement, which is the product of intense, arm's-length negotiations, including mediation conducted by an experienced and esteemed mediator; and which provides valuable monetary compensation to a well-defined Settlement Class following implementation of a comprehensive Notice program?

Further, should the Court: provisionally certify a Settlement Class; order Notice; appoint the five Plaintiffs as Settlement Class Representatives; appoint Hagens Berman as Class Counsel for the Settlement Class; approve KCC LLC as Settlement Administrator; approve the Parties' proposed objection and exclusion procedures set forth in the Settlement Agreement; and schedule a Final Approval Hearing as well as a hearing on Plaintiffs' motion for Service Awards and recovery of Plaintiffs' attorneys' fees, costs, and expenses?

## III.    STATEMENT OF RELEVANT FACTS

### A.    Background facts

Tesla sells battery-powered electric vehicles in the United States and throughout the world. Beginning in or about October 2016, Tesla announced its new Hardware 2 ("HW2") Model S and Model X vehicles. Tesla also announced that it would release the next generation Enhanced Autopilot for HW2 vehicles, which consumers had the option to purchase for $5000.[2]

Enhanced Autopilot added new capabilities. As Tesla's website explained: "Your Tesla will match speed to traffic conditions, keep within a lane, automatically change lanes without requiring driver input, transition from one freeway to another, exit the freeway when your destination is near, self-park when near a parking spot and be summoned to and from your garage."

When Tesla announced Enhanced Autopilot in October 2016, the company stated that software for these features was "expected to complete validation and be rolled out to your car via an over-the-air update in December 2016, subject to regulatory approval." (Tesla autopilot webpage, available at

---

[2] Consumers could also purchase Enhanced Autopilot later for $6000.

http://web.archive.org/web/20170123045718/https://www.tesla.com/autopilot (capture from Jan. 23, 2017) (last visited Mar. 20, 2017).)  On January 24, 2017, Tesla updated its website to state that "Tesla's Enhanced Autopilot software has begun rolling out and features will continue to be introduced as validation is completed, subject to regulatory approval."

Beginning in January 2017, Tesla began rolling out the Enhanced Autopilot features.  The Enhanced Autopilot features were improved and augmented over time.  Updates were released in February, March, May, June, and July.  As of September 2017, all of the Enhanced Autopilot features had been delivered with the exception of On-ramp to Off-ramp and Smart Summon.

All Tesla HW2 vehicles are equipped with standard safety features.  Tesla's website describes its "standard safety features" to include: (1) Automatic Emergency Braking; (2) Front Collision Warning; (3) Side Collision Warning; and (4) Auto High Beams.  In October 2016, Tesla's website stated that the safety features would "become available in December 2016 and roll out through over-the-air updates."  On January 24, 2017, Tesla's website was updated to state that the standard safety features "have begun rolling out through over-the-air updates."  The standard safety features were not available in December 2016, but were rolled out beginning in January 2017; the rollout was completed in May 2017.[3]

**B.   Plaintiffs and their claims**

Plaintiff Dean Sheikh is a resident of Denver, Colorado.  He placed an order for his Model S 60 D on November 20, 2016, paying a $2,500 deposit.  On November 24, 2016, his vehicle design was confirmed with a purchase price of $81,200, inclusive of a $5,000 payment for Enhanced Autopilot.  He took delivery of his Model S 60 D on December 27, 2016.

Plaintiff John Kelner is a resident of Davie, Florida.  On December 10, 2016, he placed an order for a Model S 90 D through Tesla's online system, paying a $2,500 deposit.  On December 14, 2016, he paid a $24,333.57 initial lease payment.  His vehicle design was confirmed with a purchase price of $108,700.00, inclusive of a $5,000 payment for Enhanced Autopilot.  He took delivery of his Tesla on December 16, 2016.

---

[3] The speed at which Automatic Emergency Braking was enabled was increased in June 2017.

1   Plaintiff Tom Milone is a resident of Jackson, New Jersey.  He placed an order for his Model S
2   90 D on November 23, 2016, paying a $2,500 deposit.  His vehicle design was confirmed with a
3   purchase price of $113,200.00, inclusive of a $5,000 payment for Enhanced Autopilot.  He took delivery
4   of his Model S 90 D on December 29, 2016.

5   Plaintiff Daury Lamarche is a resident of Marlton, New Jersey.  In the fall of 2016, he placed an
6   order for a Model S 75 D and paid a $2,500 deposit.  His vehicle design was confirmed on December 3,
7   2016, with a purchase price of $94,950, inclusive of a $5,000 payment for Enhanced Autopilot.  Plaintiff
8   Lamarche took delivery of his Model S 75 D on December 14, 2016.

9   Plaintiff Michael Verdolin is a resident of Chula Vista, California.  He placed an order for his
10   Model X P100D on June 26, 2016, paying a $2,500 deposit.  His vehicle design was confirmed on July 3,
11   2016, with a purchase price of $146,950, inclusive of a $2,500 payment for original Autopilot.  When
12   Plaintiff Verdolin was told his car was ready, he learned that it would include the Enhanced Autopilot
13   system instead of the original Autopilot system.  Plaintiff Verdolin took delivery of his Model X P100 D
14   on December 23, 2016.

15   At the time the Plaintiffs took delivery of their cars, the Enhanced Autopilot and standard safety
16   features of the cars were not operational.  The features became operational and were improved as the
17   software for the features was rolled out over time.  As of May 2017, the full suite of standard safety
18   features was operational.  As of September 2017, Enhanced Autopilot was fully functional, with the
19   exception of On-ramp to Off-ramp and Smart Summon.

20   Plaintiffs alleged that Tesla's delay in providing the features violated California's Unfair
21   Competition Law (UCL), Consumers Legal Remedies Act (CLRA), and False Advertising Law (FAL) on
22   behalf of a nationwide class of Tesla owners and lessees.  (*E.g.*, Dkt. No. 24 ¶¶ 121-28; 129-143; 144-51.)
23   Plaintiffs also asserted claims under California's common law.  Alternatively, Plaintiffs pled consumer
24   protection and other claims under the laws of the states of each of the Class Representative Plaintiffs.
25   (*E.g.*, Dkt. No. 24 ¶¶ 165-341.)

26

27

28

## C.      Proceedings to-date

Following an extensive investigation into the technology and real-world performance of Tesla vehicles and Enhanced Autopilot, Plaintiffs filed their original Complaint on April 19, 2017.  (Dkt. No. 1.)  On April 26, 2017, Plaintiffs filed an Amended Complaint, adding a California plaintiff and causes of action under California law.  (Dkt. No. 6.)  After extensive further investigation, including review of Plaintiffs' actual experiences with Enhanced Autopilot, Plaintiffs filed their Second Amended Complaint on July 19, 2017.  (Dkt. No. 24.)

Following Plaintiffs' Second Amended Complaint, Tesla agreed to provide preliminary discovery to Plaintiffs as a prerequisite to possible early mediation discussions.  (*See* Declaration of Thomas E. Loeser In Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Loeser Decl."), ¶ 2.) Following review of this discovery material, and further investigation of the claims and then-current status of Enhanced Autopilot and the standard safety features, Plaintiffs and Tesla agreed to engage in an early mediation, which was set for November 2, 2017, with Randall Wulff at Mr. Wulff's Oakland, California offices.  (*See id.*, ¶ 3.)

The parties exchanged detailed mediation briefing and attended a full-day mediation session with Mr. Wulff on November 2, 2017.  (*See* Loeser Decl., ¶ 4.)  Through intensive discussions and with the active assistance of the mediator, the parties agreed on the contours of a settlement that would provide payments to owners and lessees of affected Model S and Model X Tesla vehicles who purchased Enhanced Autopilot with their vehicles based upon the dates such vehicles were ordered and the dates they were delivered.  In essence, the agreed settlement would provide a variable payment based upon Tesla's website representations at the time a car was ordered, and the amount of time that the owner had the car prior to September 2017, when Enhanced Autopilot was substantially delivered.

As is often the case in complex settlements involving complex products and legal claims, the devil was in the details.  The parties spent months following the initial mediation in detailed discussions, often several days per week, including reviewing and assessing confirmatory discovery concerning Tesla's technologies.  (*See* Loeser Decl., ¶ 5.)  Additionally, Plaintiffs' counsel engaged in multiple extended discussions with Plaintiffs and other Tesla owners and lessees concerning improvements and

developments of the Enhanced Autopilot and standard safety features, as these were periodically rolled out "over-the-air" to their cars.  (*See id.*)  Ultimately, on April 27, 2018, the Settlement was finalized and sent to Plaintiffs and Defendant for execution.  (*See id.*, ¶ 5.)

**D.     The Settlement**

**1.     Settlement Class definition, class period, and claims period**

On May 15, 2018, following much negotiation and discussion, including numerous email exchanges; requests for, and production of, further data; telephone conferences; exchanges of drafts and terms; and consultation with clients, the Parties inked (via counsel) their Settlement Agreement.  (Loeser Decl., ¶ 7.)

The Settlement Agreement defines the Settlement Class as:

> All U.S. residents who purchased Enhanced Autopilot in
> connection with their purchase or lease of a Tesla Hardware 2 Model S or
> Model X vehicle delivered to them on or before September 30, 2017.

(Loeser Decl., Ex. A, § I.A.)

The Settlement Class is the Nationwide Enhanced Autopilot Subclass proposed in the Second Amend Complaint.  (*Compare* Loeser Decl. Ex. A, § I.A., *with* Dkt. No. 24, ¶ 110.)  Based on discovery and analysis, including recent representations by Tesla, the Parties estimate that the proposed Settlement Class consists of approximately 32,905 members.  (Loeser Decl., ¶ 9.)

The class period runs from the date the first HW2 Model S or Model X was ordered through September 30, 2017, the date by which the parties agree that Enhanced Autopilot was substantially delivered.  (Loeser Decl., Ex. A, § I.A.)  The Settlement does not require a claims process, all Settlement Class members who do not opt-out of the Settlement will be sent a check for their portion of the Settlement fund.  (*Id.*, § II.B.)

**2.     Relief to the Settlement Class**
**a.     Generally**

The Settlement provides for a Settlement Fund of $5,415,280.00 in non-reversionary monetary relief.  (*Id.*, § II.A.)   Based on discovery and analysis, including representations by Tesla, the features were continuously rolled out and updated commencing in January 2017.  Rollout of the standard safety

features was complete in May 2017.  As of September 30, 2017, Enhanced Autopilot features were substantially complete on all HW2 Tesla Model S and Model X vehicles.  As part of the Settlement, Tesla has affirmed its commitment to release the remaining Enhanced Autopilot features (On-ramp to Off-ramp and Smart Summon).  The Settlement Agreement provides payments intended to compensate Tesla owners for the delay between the delivery of their vehicles and the implementation of the Enhanced Autopilot features.  The Settlement fund will be distributed to the Settlement Class net of: attorneys' fees, costs, and expenses (if approved); and Service Awards to the five proposed Class Representatives (if approved).  (*Id.*, Ex. A, §§ II.A.1; II.A.3; V.)  Separately and in addition to the Settlement Fund, Tesla will pay the costs of Class Notice and settlement administration. (*Id.*, Ex. A, § II.A.3).  Plaintiffs and their counsel endorse the value and reasonableness of this proposed Settlement. (Loeser Decl., ¶ 11.)

> **b.    Direct payments to Settlement Class Members**

The proposed Settlement is claims-paid.  (Loeser Decl., Ex. A, §§ II.B; IX.C.)  Settlement Class Members will be paid a portion of the Settlement Fund based upon the date that they ordered their affected vehicle and the date that they took delivery of the vehicle.  The Settlement Agreement provides a payment table that sets forth Settlement Class Members' payment amounts as follows:

| Month class member took delivery | Oct-16 | Nov-16 | Dec-16 | Jan-2017 | Feb-2017 | Mar-2017 | Apr-2017 | May-2017 | Jun-2017 | Jul-2017 | Aug-2017 | Sep-2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class members who purchased prior to January 24, 2017 | $280 | $280 | $280 | $280 | $225 | $200 | $150 | $125 | $100 | $75 | $50 | $25 |
| Class members who purchased January 24, 2017 or later | NA | NA | NA | $210 | $170 | $150 | $115 | $95 | $75 | $55 | $40 | $20 |

The payments set forth in the table above are approximate and could change based upon whether and the extent to which the Court approves Plaintiffs' requests for service awards and attorneys' fees and costs.

> **c.    Non-Monetary Benefit**

Tesla reaffirms its commitment to release any Enhanced Autopilot features that as of the Effective Date are not already released in Tesla HW2 Vehicles.

### d.     Secondary Distribution and Residual

The net Settlement Fund (after payment of service awards and attorneys' fees and costs, to the extent approved by the Court) will be distributed in its entirety to Settlement Class Members via check. To the extent any such checks are uncashed or undeliverable, the Settlement Agreement provides for a second distribution to recipients of all uncashed checks if the resulting amount per Settlement Class Member would equal or exceed $15.  The Settlement Agreement provides that any residual after the second distribution (or the first distribution if such residual would result in a per-Settlement Class Member payment of less than $15), will be donated to the Ohio State University Center for Automotive Research and/or Texas A&M Transportation Institute, Center for Transportation Safety.  (*See id.*, Ex. A, § IV.3.C.b.)  Each has national reach and a reputation for advanced work in automobile sustainability, safety and efficiency.  (*See* Loeser Decl., ¶ 12.)

### 3.     Notice, opt-out procedures, and release

The Parties' Settlement provides for robust direct mail notice because Tesla presumptively has records of mailing addresses for all class members.  (Loeser Decl., Ex. A, § IV.)

The Settlement Administrator shall establish and maintain a toll-free telephone number ("Toll-Free Number"), which Settlement Class Members may call to request copies of the Class Notice.  The Settlement Administrator shall further establish and maintain a settlement website, at the address www.autopilotsettlement.com ("Settlement Website"), which shall include, without limitation, the Class Notice, copies of the Complaint, the Settlement Agreement, Frequently Asked Questions, and the Toll-Free Number.  The Toll-Free Number and the Settlement Website shall be fully operative on or before the first date notice is mailed to the Settlement Class Members.  (Loeser Decl., Ex. A, § IV.B.)  Tesla will effect CAFA notice.

Thus, the Settlement Agreement provides for the best notice practicable under the circumstances.  (Loeser Decl., ¶ 13.)

To reiterate, costs of Notice will be paid by Tesla, in addition to the Settlement Fund.  (Loeser Decl., Ex. A, § II.A.3.)  Prior to the Final Approval Hearing, the Settlement Administrator will file an

affidavit confirming that Notice has been provided as set forth in the Settlement Agreement and ordered by the Court.

The long-form notice describes the material terms of the Settlement and the procedures that Settlement Class Members must follow in order to object or opt-out of the Settlement.  (Loeser Decl., Ex. A (Notice attached as Exhibit A to the Settlement Agreement).)  Any Settlement Class Member who wishes to be excluded from the Settlement need only opt-out by making a timely request in writing to the Settlement Administrator.  (*See* Procedural Guidance for Class Action Settlements, United States District Court, Northern District of California, available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited, May 7, 2018).)

If the Court grants final approval of the Settlement following Notice, and after the period for opt-out requests and objections expires, then the Settlement Class Members who have not excluded themselves from the Settlement Class will be deemed to have released all Released Claims against the Released Parties.  (Loeser Decl., Ex. A, § VI.)  The Released Claims are those "arising from or relating to the allegations in the Complaint and all complaints filed in this Action regarding Enhanced Autopilot and safety features. . . ."  (*Id.*, § VI.B.1.)

### 4.   Service awards and attorneys' fees, costs, and expenses

The Parties have agreed that Plaintiffs may apply for Service Awards of no more than $4,800 for each of the five Plaintiffs.  (*Id.*, § V.B.)  Plaintiffs have provided extensive information to counsel concerning their Tesla vehicles; assisted counsel with the preparation of complaints in this matter; worked with counsel on the multiple over-the-air rollouts of updates and changes to the software on their vehicles; consulted with counsel as requested, and on their own initiative, throughout the pendency of this case; monitored the proceedings on their own behalf and on behalf of the putative class; worked with counsel to prepare for mediation; gathered and reviewed documents, in consultation with counsel; and monitored various Tesla owner websites and blogs concerning the issues in this case.  (Loeser Decl., ¶ 15.)  Also, Plaintiffs have consulted with counsel regarding the terms of the proposed Settlement and reviewed and approved the Settlement Agreement on their behalf and that of members of the proposed

Settlement Class.  (*Id.*, ¶ 16.)  Finally, each Plaintiff will be entitled to the same Settlement benefits, subject to the same conditions, as any other Settlement Class Member.  (*Id.*, ¶ 17.)

As for Plaintiffs' attorneys' fees, costs, and expenses, the Settlement Agreement contemplates that Plaintiffs will make a request for these by motion.  (*Id.*, ¶ 18.)  Tesla reserves the right to oppose Plaintiffs' motion to the extent it exceeds the amount of $976,000.  (Loeser Decl., Ex. A, § V.A.) Plaintiffs' motion will be filed prior to the end of the objection and opt-out period and well in advance of the Final Approval Hearing.  (Loeser Decl., Ex. A, § IV.H.3.)  Reimbursement for Plaintiffs' costs and expenses will not be separately requested and instead will be paid from the fixed request set forth above. (Loeser Decl., Ex. A, § V.A.; Loeser Decl., ¶ 18.)  Should the Court award fees, costs and expenses of $976,000, this would represent 18% of the Settlement Fund.

## IV.    ARGUMENT

**A.     The Court should grant preliminary approval of the Parties' negotiated Settlement.**

Settlements are to be encouraged in class-action lawsuits.  The Court, however, must approve class settlements for them to become effective, and in so doing, it examines "whether a proposed settlement is 'fundamentally fair, adequate, and reasonable.'"  *Burden v. SelectQuote Ins. Servs.*, 2013 WL 1190634, at *2 (N.D. Cal. Mar. 21, 2013) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988))); *see also* Fed. R. Civ. P. 23(e). Approval of a class-action settlement proceeds through two stages: preliminary approval and final approval (with notice in between).  *See* MANUAL FOR COMPLEX LITIGATION § 13.14, at 173 (4th ed. 2004) ("This [approval of a settlement] usually involves a two-stage procedure.  First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing."); 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017) (discussing the two-step approval process).  Because the Settlement in this matter passes the standards set for this first step in the process, Plaintiffs ask the Court to grant their request for preliminary approval.

1

### 1.     Negotiated class-action settlements are desirable.

As the Ninth Circuit has stated, "there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits . . . ."  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004).  Settlement is desirable in class action suits because they are "an ever increasing burden to so many federal courts and . . . frequently present serious problems of management and expense."  *Van Bronkhorst*, 529 F.2d at 950.

Additionally, courts should give "proper deference" to negotiated compromises.  The Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (citation omitted); *see also Chavez v. WIS Holding Corp.*, 2010 WL 11508280, at *1 (S.D. Cal. June 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

### 2.     The Settlement meets the standards for preliminary approval.

At the preliminary approval stage, the Court asks whether "'[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . .'"  *See, e.g.*, *Burden*, 2013 WL 1190634, at *3 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *accord Mathein v. Pier 1 Imports (U.S.), Inc.*, 2017 WL 6344447, at *3 (E.D. Cal. Dec. 12, 2017) (citations omitted).  Put another way, the Court should "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms …."  MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.632.

Further, where, as here, the Settlement was attained via "arms-length negotiations," following "meaningful discovery," in which the Parties were represented by "experienced, capable" counsel, the Court may afford to it "a presumption of fairness, adequacy, and reasonableness." *See, e.g.*, *Arnold v. Ariz. Dep't of Pub. Safety*, 2006 WL 2168637, at *11 (D. Ariz. July 31, 2006) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005)); 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, *supra*, § 13.45, at 90 (5th ed. 2017) (fairness is usually presumed when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval). Also, the involvement of a neutral mediator such as Randall Wulff is "a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607, at *3 (C.D. Cal. Jan. 24, 2017) (agreeing that a well-known neutral's participation "'weigh[ed] considerably against any inference of a collusive settlement'") (citation omitted).

Because a preliminary evaluation of the instant Settlement will reveal no "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys," and because the Settlement "appears to fall within the range of possible approval," Plaintiffs submit that it passes this initial evaluation. *See* 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.13 (5th ed. 2017); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80.

### a. The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation.

In contemplating preliminary approval, one of the Court's duties is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted). As set forth above, the Settlement was achieved only after extensive investigation; review and analysis of confidential information provided directly to counsel by Tesla and much negotiation with the aid of a well-experienced and respected mediator. (Loeser Decl., ¶¶ 2-7.) Further, the Plaintiffs were represented throughout by experienced counsel. (*Id.*, ¶ 19 and Ex. D.)

Given the extensive pre-settlement investigation and pre-mediation discovery, Plaintiffs' counsel were well-situated to evaluate the strength and weakness of Plaintiffs' case.  (*Id.*, ¶ 19.)  Far from being the product of anything inappropriate, the Settlement at issue is the result of hard-fought, adversarial work.  *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information).

### b.    The Settlement bears no obvious deficiencies, including improper preferential treatment.

Also, the Settlement bears no obvious deficiencies.  *See Burden*, 2013 WL 1190634, at *3.  There are no patent defects that would preclude its approval by the Court, such that notifying the class and proceeding to a formal fairness hearing would be inappropriate or inefficient.  *See* 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, *supra*, § 13.13 (5th ed. 2017) (referring to the Court's inquiry as to, *inter alia*, "obvious deficiencies").  An examination of the Settlement will reveal no apparent unfairness or unreasonableness.  *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) ("There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys.").

To the contrary, the Settlement provides cash relief to Class Members on a fair, claims-paid basis. (Loeser Decl., Ex. A, §§ II.B; IX.C.)  Under the Settlement Agreement, there is no biased treatment of Class Members or segments of the class.  (*See id.*)  Variations in the amount each Settlement Class Member will receive are rationally based on the language on Tesla's website at the time the Settlement Class Member ordered his or her car; the features that were enabled at the time of delivery; and the length of time between the delivery of the car, the delivery of the safety features and substantial delivery of Enhanced Autopilot.  This is proper.  *See, e.g., In re: Cathode Ray Tube (CRT) Antitrust Litig.,* 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (an "'allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel'"; "'[i]t is reasonable to allocate the settlement funds to class members based on . . . the strength of their claims on the merits.'") (citations omitted).

1    All Settlement Class Members, including the proposed Class Representatives, are treated equally.

2    (*Id.*)  As for Service Awards to the Class Representatives of up to $4,800 each, such awards are supported

3    by precedent and also by the time and attention that these Plaintiffs have devoted to this matter.  *See, e.g.,*

4    *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (affirming approval of $5,000

5    service awards as "relatively small" and "well within the usual norms of 'modest compensation' paid to

6    class representatives for services performed in the class action") (citations omitted).

7        As for the possibility of *cy pres* distributions, the Ninth Circuit has stated that "[t]he cy pres

8    doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement

9    fund to the 'next best' class of beneficiaries."  *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)

10   (citation omitted).  Here, such distributions would only occur under the limited circumstances where

11   checks to Settlement Class Members (whose information is recent and well-maintained by Tesla as all

12   Tesla sales are direct-to-consumers) go uncashed.  And the two proposed *cy pres* recipients, with their

13   national scope and their work on advanced automobile sustainability, safety and efficiency, are apt

14   proposed beneficiaries.  (*See* Loeser Decl., ¶ 15 and Exs. B & C.)

15       Finally, Plaintiffs will request approximately 18% of the Settlement Fund for attorneys' fees, *well*

16   *below* the Ninth Circuit's benchmark 25% rate for recovery in the class context.  Plaintiffs respectfully

17   submit that their sub-benchmark fee is patently fair in light of the extensive time spent by counsel on

18   this matter, their experience, and the results achieved for the proposed Settlement Class.  Plaintiffs will

19   demonstrate in their forthcoming motion that this rate will pass a cross-check for reasonableness.

20   Moreover, the reasonableness of the fee request is further supported by counsels' reimbursement of

21   costs and expenses from the set fee amount.

22   **c.    The Settlement falls within the range of possible approval.**

23       According to the Ninth Circuit, the Court should consider whether "the settlement, taken as a

24   whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (internal quotes and

25   citations omitted).  Still, the Court at this point does not conduct the fuller analysis that occurs upon the

26   motion for final approval.  *E.g., Chin v. RCN Corp.*, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010)

27   ("In fact, 'a full fairness analysis is neither feasible nor appropriate' when evaluating a proposed

28

1  settlement agreement for preliminary approval.") (citation omitted).  Here, the Parties' Settlement, which

2  will result in a $5,415,280.00 Settlement Fund in compromise of hotly contested claims falls within the

3  range of possible approval, such that preliminary approval is warranted.

4        "To evaluate the 'range of possible approval' criterion, which focuses on 'substantive fairness

5  and adequacy,' 'courts primarily consider plaintiffs' expected recovery balanced against the value of the

6  settlement offer.'" *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009)

7  (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080).  But it is "'well-settled law that a proposed

8  settlement may be acceptable even though it amounts to only a fraction of the potential recovery that

9  might be available to the class members at trial.'" *In re: Cathode Ray Tube*, 2016 WL 3648478, at *6 (citing

10  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citing *Linney v.*

11  *Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998))).

12        Here, as addressed above, discovery and information provided by the Defendant indicates that

13  Enhanced Autopilot was substantially delivered within ten months of the earliest delivery date of the

14  vehicles at issue.  Plaintiffs sought to recover compensation for the delays they experienced between the

15  time that they paid for the advertised features on their Tesla vehicles and the time such features were

16  delivered.  But they also acknowledged the possibility that Tesla might be able to demonstrate its

17  representations were  not misleading.  Tesla contends that it communicated that Enhanced Autopilot

18  features might not be released by December 2016, and that customers who purchased after January 24,

19  2017, had even weaker claims because Tesla updated its website on that date to state that the Enhanced

20  Autopilot features had "begun rolling out" and would continue to roll out over the coming months, and

21  they did.  "Approval of a class settlement is appropriate when plaintiffs must overcome significant

22  barriers to make their case."  *In re: Cathode Ray Tube*, 2016 WL 3648478, at *6 (citation omitted).

23       So while Plaintiffs had what they believed to be strong affirmative theories and rebuttals to

24  Tesla's defenses, nonetheless, there was significant risk in proceeding further with litigation.  Ultimately,

25  after taking into account the risk, expense, complexity, and likely duration of further litigation, *see, e.g.*,

26  *Burden*, 2013 WL 1190634, at *3, Plaintiffs and their experienced counsel, with the aid of the Parties'

27  seasoned and well-respected mediator, were able to achieve a Settlement that allows for substantial

28

monetary relief to the Settlement Class.  With all of these factors considered, the Settlement falls within the range of possible approval.

**B.     The proposed Settlement Class merits provisional certification.**

Plaintiffs also ask that the Court provisionally certify the proposed Settlement Class.  The proposed Settlement Class includes all owners of Tesla vehicles who purchased the Enhanced Autopilot in conjunction with their purchase of a Tesla Model S or Model X.

Provisional certification of the proposed Settlement Class will permit notice of the proposed Settlement to issue.  Such notice will inform proposed Settlement Class Members of the existence and terms of the Settlement Agreement, of their right to be heard regarding its fairness, of their right to opt-out, and of the date, time, and place of the fairness hearing.  *See* MANUAL FOR COMPLEX LITIG. (FOURTH) §§ 21.632, 21.633.

In a situation such as this, where the proposed class seeks only economic damages (as distinct from a class or classes seeking individualized personal injury and future-injury damages), class certification is proper.  *E.g.*, *Hanlon*, 150 F.3d at 1019-23.  Here, there is one underlying type of event at issue (alleged delivery of vehicles with inoperative or incomplete Enhanced Autopilot and standard safety features), an alleged course of conduct common to all Settlement Class Members (alleged misrepresentation of the features that would be available upon delivery), and money damages at stake, such that this matter is amenable to class disposition.  Also, without this class action and Settlement, most Settlement Class Members would be "without effective strength to bring their opponents into court at all."  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

**1.     The Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy are met.**

To merit class certification, Plaintiffs must show that the class is so numerous that joinder is impracticable; questions of law or fact are common to the class; the claims of the representative Plaintiffs are typical of the claims of the class; and the proposed Class Representatives will protect the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(a).  Plaintiffs meet these requirements.

**a.      Numerosity**

Based on discovery and representations by Tesla, there are approximately 32,905 Settlement

Class Members.  (Loeser Decl., ¶ 9.)  "[J]oinder of all members is [thus] impracticable."  *See* Fed. R. Civ.

P. 23(a)(1).  Given this large number, the requirement of numerosity is easily satisfied here.  *See, e.g.,*

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (noting

that numerosity requirement has been satisfied in cases involving 39 class members).

**b.      Commonality**

As one court has summarized:

> Commonality requires the existence of questions of law or fact that are
> common to the class.  Fed. R. Civ. P. 23(a)(2).  Commonality focuses on
> the relationship of common facts and legal issues among class members.
> *See, e.g.,* 1 William B. Rubenstein, *Newberg on Class Actions* § 3:19 (5th ed.
> 2011).  Courts construe this requirement permissively.  *Hanlon v. Chrysler
> Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1988).  "All questions of fact and law
> need not be common to satisfy the rule.  The existence of shared legal
> issues with divergent factual predicates is sufficient, as is a common core
> of salient facts coupled with disparate legal remedies within the class."
> *Id.*  In fact, it only takes one common question of fact or law shared
> between proposed class members to satisfy commonality.  *Dukes,* 131 S.
> Ct. at 2556.

*Marilley v. Bonham*, 2012 WL 851182, at *4 (N.D. Cal. Mar. 13, 2012).  The requirement of commonality

is satisfied by Plaintiffs' allegations.

Among the common questions raised are:

      a.      Whether the Defendant misrepresented the features of its
automobiles that were available upon delivery through its
common representations, including its website and ordering
system.

      b.      Whether the vehicles had inoperable Enhanced Autopilot and
standard safety features at the time of delivery;

      c.      Whether Tesla's conduct violates consumer protection statutes,
false advertising laws, sales contracts, and other laws as asserted in
the Complaint;

      d.      Whether Plaintiffs and proposed class members overpaid for their
Enhanced Autopilot systems;

      e.      Whether Plaintiffs and other putative class members are entitled
to damages and other monetary relief for the delay in operability

of the Enhanced Autopilot and standard safety features and, if so, in what amount.

The Ninth Circuit cited a list of common questions including ones similar to these in *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005), where it found commonality. *See id.* at 962 (citing simple questions of fact and law). Likewise here, the requirement of commonality is met.

### c.    Typicality

Typicality is met as well. In fact, "[c]ommonality and typicality are closely related and a finding of one will generally satisfy the other." *Newman v. CheckRite Cal., Inc.*, 1996 WL 1118092, at *5 (E.D. Cal. Aug. 2, 1996) (citation omitted).

> Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3) "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

*Burden*, 2013 WL 1190634, at *5. Here, the interests of the named Plaintiffs and Settlement Class Members align neatly.

Plaintiffs advanced the same claims as members of the Settlement Class they seek to represent, and they must satisfy the same legal elements that Settlement Class Members must satisfy. They share identical legal theories with putative Settlement Class Members, based on allegations that the Defendant violated the law by its delayed delivery of the features. Their alleged injuries are the same, too; like others in the proposed class, Plaintiffs allege that they paid up front for features that were not functional when their cars were delivered to them. Thus, Rule 23(a)(3) is satisfied.

### d.    Adequacy

It also must be determined whether Plaintiffs "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). Plaintiffs meet this requirement as well.

First, Plaintiffs' claims are co-extensive with members of the putative class. All have an identical interest in establishing the Defendant's liability, and each allegedly has been injured in the same manner. All assert the same legal claims, and all seek identical relief. There is no conflict among them. Also, each Plaintiff has agreed to assume the responsibility of representing the Settlement Class. And all have acted accordingly, including by way of the means described above. (*See* Loeser Decl., ¶ 16.)

Second, as discussed and referenced in the declaration of counsel and as illustrated in the attached resumes, Plaintiffs' lawyers have extensive experience and expertise in prosecuting complex class actions, including consumer and commercial actions. (*Id.*, ¶ 19 and Ex. D.) Counsel have pursued this litigation vigorously, and they remain committed to advancing and protecting the common interests of all members of the Settlement Class. (Loeser Decl. ¶¶ 2-7, 19.)

Rule 23(a)(4) is satisfied.

**2.    Common questions predominate, and a class action is the superior method to adjudicate Settlement Class Member claims.**

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied. Here, Rule 23(b)(3) is satisfied because questions common to Settlement Class Members predominate over questions affecting only individual Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of Settlement Class Members' claims. Furthermore, the Defendant does not oppose provisional Settlement Class certification for the purpose of giving effect to the Parties' Settlement.[4] When addressing the propriety of class certification, the Court should consider the fact that, in light of the Settlement, trial will now be unnecessary, such that the manageability of the class for trial purposes is not relevant to the Court's inquiry. *E.g.*, *Hanlon*, 150 F.3d at 1021-23.

---

[4] As set forth in the Settlement Agreement, Tesla does not oppose conditional certification of the Settlement Class solely for purposes of the settlement embodied in the Settlement Agreement. If, for any reason, the Settlement is not approved by the Court, Tesla reserves all its defenses to class certification, and the Settlement Agreement provides that the stipulation for certification will become null and void and may not be used for any purpose.

### a.      Common questions predominate.

Rule 23(b)(3) requires an examination of whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members ...."  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," class treatment is justified.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Even one issue of central importance to the case and common to all class member claims can cause class litigation to be appropriate.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).  Here, common questions predominate.

Common questions include whether the Defendant misrepresented the timing of its release of the features at issue and whether Plaintiffs and the putative class members overpaid for their cars because certain features were not available at the time of delivery.  These common questions predominate over any issues affecting only individuals.

Predominance is established.

### b.      Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class.

As for the requirement in Fed. R. Civ. P. 23(b)(3) that the class action be "superior to other available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the fair and efficient resolution of all putative Settlement Class Members' claims.  Given that Plaintiffs are aware of up to 32,905 Settlement Class Members sharing common issues, the class device is the most efficient and fair means of adjudicating all these many claims.  Class treatment is certainly far superior to tens of thousands of individual suits or piecemeal litigation; in this matter, it will fulfill its function of conserving scarce judicial resources and promoting the consistency of adjudication.  *See, e.g.*, *In re Apple In-App Purchase Litig.*, 2013 WL 1856713, at *4 (N.D. Cal. May 2, 2013).  Accordingly, the superiority aspect of Rule 23(b)(3) is readily met.

### C.      The Court should approve the proposed forms and methods of class Notice.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . .'"  MANUAL FOR

1  COMPLEX LITIG. (FOURTH) § 21.312, at 293.  In order to protect the rights of absent Settlement Class

2  Members, the Court must direct the best notice practicable to them.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*,

3  472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

4  "Rule 23 … requires that individual notice in [opt-out] actions be given to class members who

5  can be identified through reasonable efforts.  Those who cannot be readily identified must be given the

6  'best notice practicable under the circumstances.'"  MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.311,

7  at 287.  Here Plaintiffs have devised an intensive and best-notice-practicable Notice program that entails

8  direct mailed notice to Settlement Class Members; a Settlement Website; and telephone access.

9  As for notice generally, it should: inform settlement class members of the "essential terms" of an

10  agreement, including the benefits it provides; advise of other pertinent information, including as to

11  attorneys' fees; and describe pertinent procedural matters.  MANUAL FOR COMPLEX LITIG. (FOURTH)

12  § 21.312, at 295 (listing elements).  Here, the Notice forms attached to the Settlement Agreement satisfy

13  these requirements.  (*See* Loeser Decl., Ex. A (Exs. A and B (short- and long-form notices)).)

14  The Notice program and documents are designed to afford notice in a comprehensive and

15  reasonable manner.  Plaintiffs respectfully ask the Court to approve them.

16  **D.      The Court should set a schedule toward final approval of the Parties' Settlement.**

17  Finally, if the Court grants preliminary approval and provisionally certifies the Settlement Class,

18  respectfully, the Court should also set the schedule set forth above and in Plaintiffs' proposed order.

19  **V.      CONCLUSION**

20  For all of the foregoing reasons, Plaintiffs ask respectfully that the Court grant preliminary

21  approval of the Parties' Settlement, conditionally certify the proposed Settlement Class, and grant the

22  other relief requested in this motion.

23

24

25

26

27

28

DATED: May 25, 2018

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____/s/ Steve W. Berman_____
            Steve W. Berman
Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
robl@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 25, 2018, I electronically transmitted the foregoing document to the

3

Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic

4

Filing to all ECF registrants.

5

By _____ /s/ Steve W. Berman _____

6

STEVE W. BERMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28