Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
robl@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Attorneys for Plaintiffs and
the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEAN SHEIKH, JOHN KELNER, TOM MILONE, DAURY LAMARCHE, and MICHAEL VERDOLIN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>                    Defendant. | No. 5:17-cv-02193-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES, AND COSTS AND EXPENSES**<br><br><br>Date:      October 17, 2018<br>Time:     9:00 a.m.<br>Judge:   Hon. Beth Labson Freeman<br>Dept.:    Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ...........................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED .........................................................1

III.  STATEMENT OF RELEVANT FACTS ..................................................................1

     A.    Introduction ................................................................................................1

     B.    Plaintiffs and their claims ..........................................................................3

     C.    Proceedings to-date ....................................................................................4

     D.    The Settlement ...........................................................................................5

           1.    Settlement Class definition, class period, and claims period.............5

           2.    Relief to the Settlement Class .........................................................6

                 a.    Generally .............................................................................6

                 b.    Direct payments to Settlement Class Members..........................6

                 c.    Non-Monetary Benefit.........................................................7

                 d.    Service awards and attorneys' fees, costs, and expenses ...........7

     E.    Preliminary approval of the settlement........................................................8

IV.   ARGUMENT ...........................................................................................................8

     A.    Applicable standards for attorneys' fee request........................................9

     B.    The Court should award 17.7% of the gross settlement fund as attorneys' fees............11

           1.    Results achieved.....................................................................11

           2.    The risk of litigation ................................................................11

           3.    Skill required and quality of the work performed...........................12

           4.    Contingent nature of the fee and the financial burden ...................13

           5.    Awards made in similar cases ....................................................13

     C.    Under a lodestar cross-check, Plaintiffs' attorneys' fee request is fair and
           reasonable.................................................................................................13

           1.    Counsels' hourly rates are reasonable.........................................15

2. The number of hours that counsel has worked, and will need to work, is reasonable. ...................................................................18

3. Counsels' fees are reasonable pursuant to the *Kerr* factors subsumed in the lodestar analysis. ..................................................................19

    (1) Novelty and complexity of the litigation ......................................19

    (2) Skill and experience of class counsel and quality of representation ......................................................................................19

    (3) Favorability of result ...................................................................20

4. The presence of a reasonable multiplier further supports the reasonableness of Plaintiffs' fee request.................................................20

D. Costs and expenses .......................................................................................20

E. The class representatives each should receive $4,800 incentive awards. .........................21

V. CONCLUSION...........................................................................................................23

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Ackerman v. W. Elec. Co.,*
   643 F. Supp. 836 (N.D. Cal. 1986) ............................................................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ............................................................................... 14, 19

*Blum v. Stenson,*
   465 U.S. 886 (1984) ................................................................................................... 15

*Camacho v. Bridgeport Fin., Inc.,*
   523 F.3d 973 (9th Cir. 2008) ...................................................................................... 15

*Camberis v. Ocwen Loan Serv. LLC,*
   2015 WL 7995534 (N.D. Cal. Dec. 7, 2015) ............................................................. 22

*Deatrick v. Securitas Sec. Servs. USA, Inc.,*
   2016 WL 5394016 (N.D. Cal. Sept. 27, 2016) ........................................................ 9, 10

*Destefano v. Zynga, Inc.,*
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................................*passim*

*Ferrington v. McAfee, Inc.,*
   2013 WL 12308314 (N.D. Cal. July 22, 2013) ............................................................ 9

*Fischel v. Equitable Life Assurance Soc'y of the U.S.,*
   307 F.3d 997 (9th Cir. 2002) ...................................................................................... 16

*Fischer v. SJB-P.D. Inc.,*
   214 F.3d 1115 (9th Cir. 2000) .................................................................................... 16

*Fraley v. Facebook, Inc.,*
   2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) ........................................................... 13

*G.F. v. Contra Costa Cty.,*
   2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ........................................................... 16

*Grove v. Wells Fargo Fin. Cal., Inc.,*
   606 F.3d 577 (9th Cir. 2010) ...................................................................................... 21

*In re Heritage Bond Litig.,*
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 19, 20

*Ingram v. Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................... 23

*Laffitte v. Robert Half Int'l Inc.*,
    376 P.3d 672 (Cal. 2016) ........................................................................ 9, 10

*Messineo v. Ocwen Loan Servicing, LLC*,
    2017 WL 733219 (N.D. Cal. Feb. 24, 2017) .......................................... 10

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................... 21

*Munoz v. UPS Ground Freight, Inc.*,
    2009 WL 1626376 (N.D. Cal. June 9, 2009) ........................................ 15

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................... 13

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................ 19, 21

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................ 22

*People Who Care v. Rockford Bd. of Educ.*,
    90 F.3d 1307 (7th Cir. 1996) ................................................................ 15

*Perkins v. LinkedIn Corp.*,
    2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ............................... 10, 12, 13

*Petersen v. CJ Am., Inc.*,
    2016 WL 5719823 (S.D. Cal. Sept. 30, 2016) ................................ 9, 10, 14

*Richardson v. THD At-Home Serv., Inc.*,
    2016 WL 1366952 (E.D. Cal. Apr. 6, 2016) ........................................ 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (2009) .............................................................................. 21

*Singer v. Becton Dickinson & Co.*,
    2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................ 23

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (S.D. Cal. 2016) ................................................ 10

*Stuart v. RadioShack*,
    2010 WL 3155645 (N.D. Cal. Aug 9, 2010) ........................................ 16

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ................................................................ 15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................... 9, 14, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)........................................................................ 16, 20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ................................................................................................. 16

*Weeks v. Kellogg Co.,*
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2011) ....................................................................... 22

*Williams v. SuperShuttle Int'l Inc.,*
   2015 WL 685994 (N.D. Cal. Feb. 12, 2015) .......................................................................... 20

*Wilson v. Airborne, Inc.,*
   2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ....................................................................... 22

*Wren v. RGIS Inventory Specialists,*
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......................................................................... 22

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(h)............................................................................................................................ 8

**NOTE FOR MOTION AND MOTION**

PLEASE NOTE that on October 17, 2018, at 9:00 a.m., or as soon thereafter as may be heard in the courtroom of the Hon. Beth Labson Freeman, U.S. District Court for the Northern District of California, San Jose Division, Plaintiffs Dean Sheikh, John Kelner, Tom Milone, Daury Lamarche and Michael Verdolin, pursuant to Fed. R. Civ. P. 23(h) and the parties' settlement agreement, will and do hereby move for an order:

1.      Granting to each of them, as named Plaintiffs, a $4,800 service award;

2.      Granting Plaintiffs' request for a reasonable attorneys' fee in the sum of $961,018.00, which is 17.7% of the gross settlement sum in this matter; and

3.      Granting Plaintiffs' request for reimbursement of costs and expenses in the sum of $14,981.95.

This motion is based on the declarations of their lawyers, including exhibits; the records and files in this matter; the argument below; and oral argument at the upcoming hearing.

## I.      SUMMARY OF ARGUMENT

Plaintiffs, Tesla owners who purchased Enhanced Autopilot in connection with their purchase or lease of a Tesla Hardware 2 Model S or Model X vehicle delivered to them on or before September 30, 2017, move for service awards and reasonable attorneys' fees, costs, and expenses.  As Plaintiffs will demonstrate, their requests are justified under the facts of this case and applicable law.

## II.      STATEMENT OF ISSUES TO BE DECIDED

Should the Court grant Plaintiffs' request for service awards in the sum of $4,800 per named Plaintiff, reasonable attorneys' fees in the sum of $961,018.00, and reasonable costs and expenses in the sum of $14,981.95?

## III.      STATEMENT OF RELEVANT FACTS

### A.      Introduction

Tesla sells battery-powered electric vehicles in the United States and throughout the world. Beginning in or about October 2016, Tesla announced its new Hardware 2 ("HW2") Model S and Model

X vehicles.  Tesla also announced that it would release the next generation Enhanced Autopilot for HW2 vehicles, which consumers had the option to purchase for $5000.[1]

Enhanced Autopilot added new capabilities.  As Tesla's website explained:  "Your Tesla will match speed to traffic conditions, keep within a lane, automatically change lanes without requiring driver input, transition from one freeway to another, exit the freeway when your destination is near, self-park when near a parking spot and be summoned to and from your garage."

When Tesla announced Enhanced Autopilot in October 2016, the company stated that software for these features was "expected to complete validation and be rolled out to your car via an over-the-air update in December 2016, subject to regulatory approval."  (Tesla autopilot webpage, available at http://web.archive.org/web/20170123045718/https://www.tesla.com/autopilot (capture from Jan. 23, 2017) (last visited Mar. 20, 2017).)  On January 24, 2017, Tesla updated its website to state that "Tesla's Enhanced Autopilot software has begun rolling out and features will continue to be introduced as validation is completed, subject to regulatory approval."

Beginning in January 2017, Tesla began rolling out the Enhanced Autopilot features.  The Enhanced Autopilot features were improved and augmented over time.  Tesla released updates in February, March, May, June, and July.  As of September 2017, Tesla had delivered all of the Enhanced Autopilot features with the exception of On-ramp to Off-ramp and Smart Summon.

All Tesla HW2 vehicles are equipped with standard safety features.  Tesla's website describes its "standard safety features" to include: (1) Automatic Emergency Braking; (2) Front Collision Warning; (3) Side Collision Warning; and (4) Auto High Beams.  In October 2016, Tesla's website stated that the safety features would "become available in December 2016 and roll out through over-the-air updates."  On January 24, 2017, Tesla's updated its website to state that the standard safety features "have begun rolling out through over-the-air updates."  The standard safety features were not available in December 2016, but were rolled out beginning in January 2017; the rollout was completed in May 2017.[2]

---

[1] Consumers could also purchase Enhanced Autopilot later for $6,000.

[2] The speed at which Automatic Emergency Braking was enabled was increased in June 2017.

**B.      Plaintiffs and their claims**

Plaintiff Dean Sheikh is a resident of Denver, Colorado.  He placed an order for his Model S 60 D on November 20, 2016, paying a $2,500 deposit.  On November 24, 2016, his vehicle design was confirmed with a purchase price of $81,200, inclusive of a $5,000 payment for Enhanced Autopilot.  He took delivery of his Model S 60 D on December 27, 2016.

Plaintiff John Kelner is a resident of Davie, Florida.  On December 10, 2016, he placed an order for a Model S 90 D through Tesla's online system, paying a $2,500 deposit.  On December 14, 2016, he paid a $24,333.57 initial lease payment.  His vehicle design was confirmed with a purchase price of $108,700.00, inclusive of a $5,000 payment for Enhanced Autopilot.  He took delivery of his Tesla on December 16, 2016.

Plaintiff Tom Milone is a resident of Jackson, New Jersey.  He placed an order for his Model S 90 D on November 23, 2016, paying a $2,500 deposit.  His vehicle design was confirmed with a purchase price of $113,200.00, inclusive of a $5,000 payment for Enhanced Autopilot.  He took delivery of his Model S 90 D on December 29, 2016.

Plaintiff Daury Lamarche is a resident of Marlton, New Jersey.  In the fall of 2016, he placed an order for a Model S 75 D and paid a $2,500 deposit.  His vehicle design was confirmed on December 3, 2016, with a purchase price of $94,950, inclusive of a $5,000 payment for Enhanced Autopilot.  Plaintiff Lamarche took delivery of his Model S 75 D on December 14, 2016.

Plaintiff Michael Verdolin is a resident of Chula Vista, California.  He placed an order for his Model X P100D on June 26, 2016, paying a $2,500 deposit.  His vehicle design was confirmed on July 3, 2016, with a purchase price of $146,950, inclusive of a $2,500 payment for original Autopilot.  When Plaintiff Verdolin was told his car was ready, he learned that it would include the Enhanced Autopilot system instead of the original Autopilot system.  Plaintiff Verdolin took delivery of his Model X P100 D on December 23, 2016.

At the time the Plaintiffs took delivery of their cars, the Enhanced Autopilot and standard safety features of the cars were not operational.  The features became operational and were improved as the software for the features was rolled out over time.  As of May 2017, the full suite of standard safety

features was operational.  As of September 2017, Enhanced Autopilot was fully functional, with the exception of On-ramp to Off-ramp and Smart Summon.

Plaintiffs alleged that Tesla's delay in providing the features violated California's Unfair Competition Law (UCL), Consumers Legal Remedies Act (CLRA), and False Advertising Law (FAL) on behalf of a nationwide class of Tesla owners and lessees.  (*E.g.*, Dkt. No. 24 ¶¶ 121-28; 129-143; 144-51.) Plaintiffs also asserted claims under California's common law.  Alternatively, Plaintiffs pled consumer protection and other claims under the laws of the states of each of the Class Representative Plaintiffs. (*E.g.*, Dkt. No. 24 ¶¶ 165-341.)

**C.       Proceedings to-date**

Following an extensive investigation into the technology and real-world performance of Tesla vehicles and Enhanced Autopilot that spanned over three months and included the review of hundreds of documents, reports and consumer complaints, Plaintiffs filed their original Complaint on April 19, 2017.  (Dkt. No. 1.)  On April 26, 2017, Plaintiffs filed an Amended Complaint, adding a California Plaintiff and causes of action under California law.  (Dkt. No. 6.)  After extensive further investigation, including review of Plaintiffs' actual experiences with Enhanced Autopilot, Plaintiffs filed their Second Amended Complaint on July 19, 2017.  (Dkt. No. 24.)

Following Plaintiffs' Second Amended Complaint, Tesla agreed to provide preliminary discovery to Plaintiffs as a prerequisite to possible early mediation discussions.  (*See* Declaration of Thomas E. Loeser In Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Loeser PA Decl.") (Dkt. No. 44), ¶ 2.)  Following review of this discovery material, and further investigation of the claims and then-current status of Enhanced Autopilot and the standard safety features, Plaintiffs and Tesla agreed to engage in an early mediation, which was set for November 2, 2017, with Randall Wulff at Mr. Wulff's Oakland, California offices.  (*See id.*, ¶ 3.)

The parties exchanged detailed mediation briefing and attended a full-day mediation session with Mr. Wulff on November 2, 2017.  (*See* Loeser PA Decl., ¶ 4.)  Through intensive discussions and with the active assistance of the mediator, the parties agreed on the contours of a settlement that would provide payments to owners and lessees of affected Model S and Model X Tesla vehicles who purchased

Enhanced Autopilot with their vehicles based upon the dates such vehicles were ordered and the dates they were delivered.  In essence, the agreed settlement would provide a variable payment based upon Tesla's website representations at the time a car was ordered, and the amount of time that the owner had the car prior to September 2017, when Enhanced Autopilot was substantially delivered. (*See id.*)

As is often the case in complex settlements involving complex products and legal claims, the devil was in the details.  The parties spent months following the initial mediation in detailed discussions, often several days per week, including reviewing and assessing confirmatory discovery concerning Tesla's technologies. (*See* Loeser PA Decl., ¶ 5.)  Additionally, Plaintiffs' counsel engaged in multiple extended discussions with Plaintiffs and other Tesla owners and lessees concerning improvements and developments of the Enhanced Autopilot and standard safety features, as these were periodically rolled out "over-the-air" to their cars. (*See id.*)  Importantly, each time a new update was rolled out to Tesla vehicles, counsel and Plaintiffs extensively researched the effects of such updates and evaluated the changes to the performance of the features at issue in this case.  Ultimately, on April 27, 2018, the Settlement was finalized and sent to Plaintiffs and Defendant for execution. (*See id.*, ¶ 6.)

**D.      The Settlement**

**1.      Settlement Class definition, class period, and claims period**

On May 15, 2018, following much negotiation and discussion, including numerous email exchanges; requests for, and production of, further data; telephone conferences; exchanges of drafts and terms; and consultation with clients, the Parties signed their Settlement Agreement. (Loeser PA Decl*.,* ¶ 7.)

The Settlement Agreement defines the Settlement Class as:

> All U.S. residents who purchased Enhanced Autopilot in connection with their purchase or lease of a Tesla Hardware 2 Model S or Model X vehicle delivered to them on or before September 30, 2017.

(*Id.*, Ex. A, § I.A.)

The Settlement Class is the Nationwide Enhanced Autopilot Subclass proposed in the Second Amend Complaint with the addition of the end date for delivery of September 30, 2017. (*Compare* Loeser PA Decl., Ex. A, § I.A., *with* Dkt. No. 24, ¶ 110.)  Based on discovery and analysis, including

recent representations by Tesla, the Parties estimate that the proposed Settlement Class consists of approximately 32,905 members.  (Loeser PA Decl., ¶ 9.)

The class period runs from the date the first HW2 Model S or Model X was ordered through September 30, 2017, the date by which the parties agree that Enhanced Autopilot was substantially delivered.  (*Id.*, Ex. A, § I.A.)  The Settlement does not require a claims process, all Settlement Class members who do not opt-out of the Settlement will be sent a check for their portion of the Settlement fund.  (*Id.*, § II.B.)

### 2.      Relief to the Settlement Class
#### a.      Generally

The Settlement provides for a Settlement Fund of $5,415,280.00 in non-reversionary monetary relief.  (*Id.*, § II.A.)   Based on discovery and analysis, including representations by Tesla, the features were continuously rolled out and updated commencing in January 2017.  Rollout of the standard safety features was complete in May 2017.  As of September 30, 2017, Enhanced Autopilot features were substantially complete on all HW2 Tesla Model S and Model X vehicles.  As part of the Settlement, Tesla has affirmed its commitment to release the remaining Enhanced Autopilot features (On-ramp to Off-ramp and Smart Summon).  The Settlement Agreement provides payments intended to compensate Tesla owners for the delay between the delivery of their vehicles and the implementation of the Enhanced Autopilot features.  The Settlement fund will be distributed to the Settlement Class net of: attorneys' fees, costs, and expenses (if approved); and Service Awards to the five proposed Class Representatives (if approved).  (*Id.*, Ex. A, §§ II.A.1; II.A.3; V.)  Separately and in addition to the Settlement Fund, Tesla will pay the costs of Class Notice and settlement administration. (*Id.*, Ex. A, § II.A.3).  Plaintiffs and their counsel endorse the value and reasonableness of this proposed Settlement. (*Id.*, ¶ 11.)

#### b.      Direct payments to Settlement Class Members

The proposed Settlement is claims-paid—that is, Settlement Class members need not submit claims for Settlement benefits.  (Loeser PA Decl., Ex. A, §§ II.B; IX.C.)  Instead, the Settlement Administrator will send checks to Class members who do not opt-out without any further action on Class members' part.  (*Id.*)  Settlement Class Members will be paid a portion of the Settlement Fund

based upon the date that they ordered their affected vehicle and the date that they took delivery of the vehicle.  The Settlement Agreement provides a payment table that sets forth Settlement Class Members' payment amounts as follows:

| Month class member took delivery | Oct-16 | Nov-16 | Dec-16 | Jan-2017 | Feb-2017 | Mar-2017 | Apr-2017 | May-2017 | Jun-2017 | Jul-2017 | Aug-2017 | Sep-2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class members who purchased prior to January 24, 2017 | $280 | $280 | $280 | $280 | $225 | $200 | $150 | $125 | $100 | $75 | $50 | $25 |
| Class members who purchased January 24, 2017 or later | NA | NA | NA | $210 | $170 | $150 | $115 | $95 | $75 | $55 | $40 | $20 |

The payments set forth in the table above are approximate and could change based upon whether and the extent to which the Court approves Plaintiffs' requests for service awards and attorneys' fees and costs.

### c.    Non-Monetary Benefit

Tesla also reaffirms its commitment to release any Enhanced Autopilot features that as of the Effective Date are not already released in Tesla HW2 Vehicles. (Loeser PA Decl., Ex. A, §II.C.)

### d.    Service awards and attorneys' fees, costs, and expenses

The Parties have agreed that Plaintiffs may apply for Service Awards of no more than $4,800 for each of the five Plaintiffs.  (*Id.*, § V.B.)  Plaintiffs have provided extensive information to counsel concerning their Tesla vehicles; assisted counsel with the preparation of complaints in this matter; worked with counsel on the multiple over-the-air rollouts of updates and changes to the software on their vehicles; consulted with counsel as requested, and on their own initiative, throughout the pendency of this case; monitored the proceedings on their own behalf and on behalf of the putative class; worked with counsel to prepare for mediation; gathered and reviewed documents, in consultation with counsel; and monitored various Tesla owner websites and blogs concerning the issues in this case.  (Loeser PA Decl., ¶ 15.)  Also, Plaintiffs have consulted with counsel regarding the terms of the proposed Settlement and reviewed and approved the Settlement Agreement on their behalf and that of members of the proposed Settlement Class.  (*Id.*, ¶ 16.)  Finally, each Plaintiff will be entitled to the same Settlement benefits, subject to the same conditions, as any other Settlement Class Member.  (*Id.*, ¶ 17.)

1

As for Plaintiffs' attorneys' fees, costs, and expenses, the parties addressed the recovery of these

2

following negotiation of the substantive terms of the proposed class settlement.  (Loeser PA Decl., ¶ 18.)

3

The parties then agreed that class counsel could request attorneys' fees, costs, and expenses payable

4

from the gross settlement fund not to exceed $976,000 in total.  (*Id.*, Ex. A, §V.A.)

5

**E.      Preliminary approval of the settlement**

6

On June 7, 2018, the Court held a hearing on Plaintiffs' motion for preliminary approval of the

7

proposed settlement.  The Court granted preliminary approval on June 8, 2018.  (Dkt. No. 50.)  The

8

Court also appointed Plaintiffs as class representatives for the proposed settlement class and Hagens

9

Berman as class counsel for that proposed class.  (*Id.*)

10

**IV.      ARGUMENT**

11

The settlement agreement provides that Plaintiffs would make their request for service awards,

12

fees, costs, and expenses by motion.  (Loeser PA Decl., Ex. A, § V.A.)  Plaintiffs now request service

13

awards in the amount of $4,800 per named Plaintiff, as well as a reasonable attorneys' fee at the rate of

14

17.7% of the gross settlement fund, or $961,018.00.  *See, e.g.*, Fed. R. Civ. P. 23(h) (permitting such

15

awards when authorized by law or the parties' agreement in certified class actions).  They also request

16

reimbursement of costs and expenses in the sum of $14,981.95.

17

Plaintiffs make these requests 14 days in advance of the deadline for objections and exclusions,

18

which is September 6, 2018.  They are supported by each of the named Plaintiffs.  (Declaration of Dean

19

Sheikh in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service

20

Awards to Class Representatives (Sheikh Decl.), ¶¶ 9-10; Declaration of John Kelner in Support of

21

Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class

22

Representatives (Kelner Decl.), ¶¶ 9-10; Declaration of Tom Milone in Support of Plaintiffs' Motion for

23

Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives (Milone Decl.),

24

¶¶ 8-9; Declaration of Daury Lamarche in Support of Plaintiffs' Motion for Award of Attorneys' Fees,

25

Costs, Expenses, and Service Awards to Class Representatives (Lamarche Decl.), ¶¶ 10-11; Declaration

26

of Michael Verdolin in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and

27

Service Awards to Class Representatives (Verdolin Decl.), ¶¶ 6-7.)

28

**A.    Applicable standards for attorneys' fee request**

Because this case was brought pursuant to CAFA diversity jurisdiction, and because the settlement agreement contains California law provisions (*see* Loeser PA Decl., Ex. A, § X.D), California law applies to Plaintiffs' request for attorneys' fees. *E.g., Petersen v. CJ Am., Inc.*, 2016 WL 5719823, at *1 (S.D. Cal. Sept. 30, 2016) (citations omitted); *accord, e.g., Ferrington v. McAfee, Inc.*, 2013 WL 12308314, at *2 (N.D. Cal. July 22, 2013). Moreover, Tesla is located in California, its vehicles are manufactured in California, vehicle ordering takes place through Tesla's websites and servers located in California, and the decisions underlying the allegations in the Complaint all emanated from Tesla's offices in California.

This is a common-fund case. Plaintiffs seek an attorneys' fee award of 17.7% of the $5.4 million settlement fund, *i.e.*, $961,018.00. (*See* Loeser PA Decl., Ex. A, § V.A (contemplating that a fee petition may be filed seeking a fee and costs award from the Settlement Fund in an amount "not to exceed Nine Hundred Seventy-Six Thousand Dollars ($976,000)").)

The California Supreme Court has recently and emphatically clarified that the percentage-of-fund method is an available, venerable, and desirable way under California law to determine fee awards in common-fund cases such as this one. *Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 686 (Cal. 2016) ("The recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation . . . —convince us the percentage method is a valuable tool that should not be denied our trial courts.") (citations omitted).

Likewise, in situations where state law does not apply to a fee request, the Ninth Circuit has held that district courts have the discretion in common-fund cases "to choose either the percentage-of-the-fund or the lodestar method" for fee awards. *E.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also, e.g., Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016, at *6 (N.D. Cal. Sept. 27, 2016); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ("Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class.") (citing *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

1    In fact, the percentage method is especially suitable here, given the easily quantified, non-

2    reversionary common fund provided by the settlement.  *See, e.g.*, *Deatrick*, 2016 WL 5394016, at *6

3    ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases. . . . Because

4    the benefit to the class is easily quantified in common-fund settlements, courts can award attorneys a

5    percentage of the common fund in lieu of the often more time-consuming task of calculating the

6    lodestar.") (citations and internal quotations omitted)); *Destefano*, 2016 WL 537946, at *16 (citations

7    omitted); *Laffitte*, 376 P.3d at 686-87 (approving the use of the percentage method in the "true common

8    fund" case before it).

9    California has no specific, longstanding percentage benchmark like the Ninth Circuit's.  But

10   California courts have recognized that 25% and even percentages considerably above that figure are well

11   within the range of reasonableness.  *E.g.*, *Peterson*, 2016 WL 5719823, at *1 ("California has recognized

12   that most fee awards based on either a lodestar or percentage calculation are 33 percent and has

13   endorsed the federal benchmark of 25 percent.") (citation omitted); *Spann v. J.C. Penney Corp.*, 211 F.

14   Supp. 3d 1244, 1262-63 (S.D. Cal. 2016) (same, and citing additional cases).  As for common-fund cases

15   where state law is not the governing authority, the benchmark award is 25 percent of the recovery

16   obtained.  *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *8 (N.D. Cal. Feb. 24, 2017)

17   ("Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as

18   the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special

19   circumstances' justifying a departure.") (citations omitted) (alteration in original).

20   When the percentage-of-fund method is chosen, whether pursuant to California law or Ninth

21   Circuit precedent, the Court may, but is not required to, use a lodestar cross-check to further examine

22   the reasonableness of the requested award.  *See, e.g.*, *Laffitte*, 376 P.3d at 687; *Perkins v. LinkedIn Corp.*,

23   2016 WL 613255, at *13 (N.D. Cal. Feb. 16, 2016) (citing *Vizcaino*, 290 F.3d at 1050-51).  However, a

24   lodestar cross-check normally does not involve inspecting and scrutinizing each hour attested-to by

25   counsel.  *E.g.*, *Laffitte*, 376 P.3d at 687-88 ("With regard to expenditure of judicial resources, we note that

26   trial courts conducting lodestar cross-checks have generally not been required to closely scrutinize each

27   claimed attorney-hour, but have instead used information on attorney time spent to 'focus on the general

28

question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.'") (citations omitted).

**B.   The Court should award 17.7% of the gross settlement fund as attorneys' fees.**

As stated above, Plaintiffs seek an award of 17.7% of the $5.415 million gross settlement fund, *i.e.*, $961,018.00.

"As there is no definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach, the Court [may] consider[] the reasonableness of the percentage request in light of the factors endorsed by the Ninth Circuit, with a 25% award as a starting point." *Richardson v. THD At-Home Serv., Inc.*, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016).

The Ninth Circuit factors are as follows:

> In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work performed; (4) the contingent nature of the fee and the financial burden; and (5) the awards made in similar cases.

*Destefano*, 2016 WL 537946, at *17 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1047). Plaintiffs will now address these factors.

**1.   Results achieved**

The results achieved for the class are the most significant factor to be considered as the Court considers whether a fee request is fair and reasonable. *Id.* (citations omitted). Here, after much investigation, research, and analysis; an in-person mediation session helmed by a well-respected mediator, and many follow up discussions, Plaintiffs, facing a determined opponent, achieved a $5.415 million, non-reversionary, claims-paid, cash settlement for the Class. Plaintiffs' hard-won Settlement will directly result in the distribution of millions of dollars to class members who otherwise would not have had the ability to wage a case on their own, and no Class member will need to complete a claim form in order to get his or her share of the settlement fund.

**2.   The risk of litigation**

The foregoing results were obtained notwithstanding the significant legal hurdles facing Plaintiffs. Plaintiffs and their experienced counsel engaged in settlement discussions after having

undertaken extensive research to support their original and two amended complaints.  Major

contributing factors to the risk of the litigation were Tesla's essentially limitless resources, its

unprecedented customer loyalty, and its advanced technology that allowed Tesla vehicles to be updated

and improved "over-the-air."  This capability meant that the deficiencies in delivery of Enhanced

Autopilot features could be, and ultimately were, corrected by Tesla, rendering Plaintiffs' damages

increasingly less severe as time went by.

Moreover, Tesla promised to continue to contest this case vigorously—a consideration not to be

taken lightly given its resources and the caliber of its attorneys.  Even so, it was only after mediation with

Mr. Wulff (preceded by briefing on both sides), numerous discussions with Tesla's counsel (aided by

further writings), and extensive further research, that Plaintiffs could agree to a settlement they

considered reasonable under all the circumstances.  *See, e.g.*, *LinkedIn*, 2016 WL 613255, at *15 (the

defendant "contested its liability, and intended to contest class certification as well," such that the risk

factors at issue "favor[ed] granting Class Counsel's request" for fees).

### 3.   Skill required and quality of the work performed

As courts have recognized, the "prosecution and management of a complex national class action

requires unique legal skills and abilities."  *Destefano*, 2016 WL 537946, at *17 (citation omitted).

Counsel in this matter has litigated vigorously against one of the best-financed corporations in

the world, in a case involving complicated technical issues.  Counsel worked closely with five named

Plaintiffs from across the United States (California, Colorado, New Jersey and Florida).  The highly

technical nature of this case required extensive research and analysis into the software and hardware

underlying one of the most complex and technologically advanced machines available for public

consumption.

The qualifications of class counsel are set forth in Mr. Loeser's declaration submitted with the

motion for preliminary approval.  (*See* Loeser PA Decl., ¶ 19 and Ex. D thereto).  Where, as here,

counsel are highly experienced in class action litigation, shepherded the case to a prompt resolution,

have a record of success in this type of litigation, and faced high caliber opposing counsel throughout,

this factor, too, "supports the fee award sought."  *Destefano*, 2016 WL 537946, at *17 (citations omitted).

**4.      Contingent nature of the fee and the financial burden**

Further, Plaintiffs' counsel undertook this matter on a contingent fee basis, with all of the financial risk that arrangement entailed, including the risk of no recovery.  *See LinkedIn*, 2016 WL 613255, at *15.  Given the complexities, difficulties, and size of individual claims, which, unfortunately, made it difficult to engage representation, this case could not have gone forward except as a class action, with lawyers experienced in complex class actions to lead it.  *See Destefano*, 2016 WL 537946, at *18.  This is particularly true here, where Tesla's extraordinarily high brand loyalty and owner enthusiasm made many buyers, even if dissatisfied with Enhanced Autopilot, reluctant to step up and serve as class representatives.  Here, class counsel began investigating the claims underlying this case in January 2017; and after months of research, they filed their original complaint in April 2017.  A settlement was not finalized until May 8, 2018, such that class counsel have accrued significant (and reasonable) lodestar, costs, and expenses along the way.  *See id.*

"Additionally, Class Counsel was, to an extent, precluded from taking and devoting resources to other cases or potential cases, with no guarantee that the time expended would result in any recovery or recoupment of costs."  *LinkedIn*, 2016 WL 613255, at *15.  "Thus, that Lead Counsel here have significant experience in this field and took on this matter on a contingent basis further indicates that the 25 percent benchmark fee request is reasonable."  *See Destefano*, 2016 WL 537946, at *18.  Here, of note, class counsel seeks less than 18%, well below the benchmark 25% rate.

**5.      Awards made in similar cases**

Finally, the 17.7% award sought here is substantially below that awarded in other similar cases involving contract and commercial issues in an advanced technology setting, including in the automotive field.  *See, e.g., LinkedIn*, 2016 WL 613255, at *14-17 (25% award) (citing *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1128, 1132 (N.D. Cal. 2015) (granting 25% benchmark attorney's fees)); *Fraley v. Facebook, Inc.*, 2013 WL 4516806, at *3 (N.D. Cal. Aug. 26, 2013) (same); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *9-10 (N.D. Cal. Mar. 18, 2013) (same).

**C.      Under a lodestar cross-check, Plaintiffs' attorneys' fee request is fair and reasonable.**

If the Court chooses to perform a lodestar cross-check, which is discretionary, Plaintiffs believe that it will confirm that the instant attorneys' fees request is fair and reasonable.  "The lodestar figure is

calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted).  "[T]he court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975))).  Such factors, which are included in the so-called *Kerr* factors, many of which are "subsumed within the initial calculation of hours reasonably expended at a reasonable rate," only warrant a departure from "the lodestar figure in 'rare and exceptional cases." *Id.* at 942 n.7 (citations omitted).  The *Kerr* factors themselves "largely subsume[]" California factors and are similar to state law factors, *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 860-61 (N.D. Cal. 1986), so Plaintiffs discuss the *Kerr* factors below.

Here, 17.7% of the common fund, *i.e.*, $961,018, represents a reasonable multiplier of 2.36 to the lodestar of Plaintiffs' counsel.  (*See* Declaration of Thomas E. Loeser In Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives ("Loeser Decl."), ¶¶ 2, 6 and Ex. A (submitting post-review lodestar of $406,912.50).)  This multiplier is well within the range of multipliers awarded by California and Ninth Circuit courts.  *E.g.*, *Petersen*, 2016 WL 5719823, at *1 (noting that in *Vizcaino*, 290 F.3d at 1051-54, the Ninth Circuit upheld a 3.65 multiplier and stated that "the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar") (citation omitted).  In light of class counsel's ability to reach a prompt, claims-paid resolution of this matter and counsel's request for a percentage of the fund far below the 25% benchmark, a 2.36, within-range multiplier is appropriate under the facts of this case.

Further, Plaintiffs should suffer no penalty for reaching a fair and reasonable settlement without engaging in years of litigation first.  While protracted litigation might have generated a larger fee for class counsel, it would have only delayed a fair resolution of, and settlement benefits to satisfy, Plaintiffs' claims.  Here, the underlying facts had played out; the defendant produced pre-mediation discovery,

which counsel reviewed and analyzed; counsel had fully evaluated Plaintiffs' claims; and a settlement was achieved with the aid of a well-respected, thoroughly seasoned mediator, Mr. Wulff.  (Loeser PA Decl., ¶¶ 2-7.)  Under these circumstances, there should be no deduction due to early settlement.  *See, e.g.,* *Vizcaino*, 290 F.3d at 1050 n.5 ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief.  The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.") (citations omitted); *Munoz v. UPS Ground Freight, Inc.*, 2009 WL 1626376, at *3  (N.D. Cal. June 9, 2009) (awarding fees constituting a 2.87 multiplier and holding: "Second, plaintiffs' counsel argue that the fact they have spent only about 300 hours on this case should not result in a reduction of the percentage of fees awarded. Early settlement promotes the efficient resolution of disputes and is to be encouraged, not discouraged.  These arguments are well taken, and they justify awarding plaintiffs' counsel some substantial amount beyond what they have spent in prosecuting the case.").

### 1.   Counsels' hourly rates are reasonable.

For purposes of the lodestar method, reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  The rates applied should be in line with those commanded by lawyers of reasonably comparable skill, experience, and reputation.  *Blum*, 465 U.S. at 895 n.11.  Here, class counsel has extensive experience in prosecuting complex litigation, including consumer class actions. (*See* Loeser PA Decl., ¶ 19 and Ex. D thereto.)

Declarations of counsel regarding prevailing fees in the community and rate determinations in other cases "are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The district court also may consider evidence of counsel's customary hourly rate.  *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.

1  1996) (holding that an attorney's actual billing rate for similar work is presumptively appropriate).  Here,

2  a declaration from counsel provides such evidence.  (*See* Loeser Decl., ¶¶ 8-9.)

3       Counsel's declaration sets forth their current professional and para-professional rates.  This is so

4  because courts generally apply each biller's current rates for all hours of work performed, regardless of

5  when the work occurred, as a means of compensating for the deferred nature of counsel's work.  *See, e.g.,*

6  *Fischel*, 307 F.3d at 1010; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

7       Class counsel's rates are reasonable and appropriate for complex, nationwide litigation conducted

8  in the Northern District of California.  For example, in the *In Re Volkswagen "Clean Diesel" Marketing,*

9  *Sales Practices, and Products Liability Litigation*, the Court found reasonable "billing rates ranging from $275

10  to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals." *In re Volkswagen*

11  *"Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *8 (N.D. Cal. Mar. 17,

12  2017).

13       The hourly rates of the attorneys involved in this case compare favorably to those rates.  And

14  they fall within the range of other rates awarded by other courts in this judicial district.  *See, e.g., Stuart v.*

15  *RadioShack*, 2010 WL 3155645, at *6-7 (N.D. Cal. Aug 9, 2010) (approving 25% percentage-of-fund

16  award with rates at and exceeding $800 per hour, where average hourly rate was $708); *G.F. v. Contra*

17  *Costa Cty.*, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015) (referring to Bay Area litigation where

18  rates "of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support

19  and paralegals" were found reasonable) (citation omitted); *see also* Loeser Decl., ¶ 9 (describing other

20  instances of rates approved in this district at up to $900 and $975 per hour for attorneys, and even up to

21  $1,200 per hour for senior partners, as well as rates at up to $430 per hour for para-professionals).

22       In their supporting declaration, Loeser Decl., ¶¶ 6-7 and Ex. A thereto, class counsel submit

23  categorized summaries of time reasonably accrued, together with a chart showing time multiplied by the

24  working professionals' hourly rates.  *Cf. Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)

25  (concluding that a "summary of the time spent on a broad category of tasks such as pleadings and

26  pretrial motions" met "basic requirement" of documentation).  This chart is reproduced here:

27

28

| Category | Timekeeper | Hours | Rate | Total |
|---|---|---|---|---|
| | | | | |
| Investigation/Research/ Preparation of Complaints | Berman, Steve | 3.5 | $975.00 | $3,412.50 |
| | Flexer, Carrie | 1.0 | $250.00 | $250.00 |
| | Grueneich, Nicolle | 23 | $200.00 | $4600.00 |
| | Haegele, Robert | 0.5 | $200.00 | $100.00 |
| | Loeser, Thomas | 114.8 | $700.00 | $80,360.00 |
| | Lopez, Robert | 119.6 | $575.00 | $68,770.00 |
| | Salonga, Joseph | 2.5 | $200.00 | $500.00 |
| **Total Investigate/Research/Complaints** | | **264.9** | | **$157,992.50** |
| Case Management & Client Contact | Grueneich, Nicolle | 4.9 | $200.00 | $980.00 |
| | Haegele, Robert | 1.2 | $200.00 | $240.00 |
| | Loeser, Thomas | 29.1 | $700.00 | $20,370.00 |
| | Lopez, Robert | 2.0 | $575.00 | $1,150.00 |
| **Total Case Mgmt. & Client Contact** | | **37.2** | | **$22,740.00** |
| Ongoing Research | Grueneich, Nicolle | 0.3 | $200.00 | $60.00 |
| | Loeser, Thomas | 12.6 | $700.00 | $8,820.00 |
| | Lopez, Robert | 42.0 | $575.00 | $24,150.00 |
| | Stevens, Jessica | 0.2 | $200.00 | $40.00 |
| **Total Ongoing Research** | | **55.1** | | **$33,070.00** |
| Discovery | Lopez, Robert | 5.2 | $575.00 | $2,990.00 |
| **Total Discovery** | | **5.2** | | **$2,990.00** |
| Settlement/Mediation | Berman, Steve | 24.5 | $975.00 | $23,887.50 |
| | Garcia, Adrian | 6.0 | $175.00 | $1,050.00 |
| | Grueneich, Nicolle | 7.4 | $200.00 | $1,480.00 |
| | Loeser, Thomas | 121.1 | $700.00 | $84,770.00 |
| | Lopez, Robert | 74.6 | $575.00 | $42,895.00 |
| | Salonga, Joseph | 4.9 | $200.00 | $980.00 |
| **Total Settlement/Mediation** | | **238.5** | | **$155,062.50** |
| Motion/Settlement Approval/Hearings | Garcia, Adrian | 3.0 | $175.00 | $525.00 |
| | Grueneich, Nicolle | 0.7 | $200.00 | $140.00 |
| | Haegele, Robert | 16.7 | $200.00 | $3,340.00 |
| | Loeser, Thomas | 37.5 | $700.00 | $26,250.00 |
| | Lopez, Robert | 6.5 | $575.00 | $3,737.50 |
| | O'Hara, Chris | 1.0 | $625.00 | $625.00 |
| | Salonga, Joseph | 2.2 | $200.00 | $440.00 |
| **Total Motion/Stlmt. Approval/Hearings** | | **67.6** | | **$35,057.50** |
| **Grand Total** | | **668.5** | | **$406,912.50** |

Class counsel's reasonable rates, when multiplied by the number of hours expended on the tasks described in the immediately following section of this memorandum, and in counsel's supporting declaration, result in a reviewed, adjusted lodestar of $406,912.50. (*See* Loeser Decl., ¶¶ 6-14 and Ex. A thereto.)

2.     **The number of hours that counsel has worked, and will need to work, is reasonable.**

The number of hours worked by class counsel to-date also is reasonable.  (*See* Loeser Decl., ¶¶ 10-14 (summarizing reasonableness factors).)  As discussed in the declaration of counsel submitted with this motion, *see* Loeser Decl., ¶¶ 6-7 and Ex. A thereto, reasonable and necessary work on this matter has included:

a.     **Investigation, research, and preparation of complaints:**  Investigation and analysis of fact, legal, and technical issues pertaining to Plaintiffs' claims; legal and factual research, including analysis of publicly available statements; extensive review and analysis of technical documents; and drafting of the initial and subsequent versions of the complaint.

b.     **Case management and client contact:**  Consultation with the named Plaintiffs and members of the putative class throughout the pendency of the case; innumerable telephone conferences and emails with opposing counsel regarding case issues; coordination among counsel and staff re: work assignments and needed projects and tasks; case management efforts with the Court; and coordination regarding assignments, time maintenance, and recordkeeping.

c.     **Ongoing research:**  Ongoing fact and legal research in aid of Plaintiffs' claims and potential claims.

d.     **Discovery:** Discussions with the defendant regarding pre-mediation discovery; pre-mediation discovery requests and production; and review and analysis of material produced.

e.     **Settlement:**  Consultation with the named Plaintiffs regarding settlement issues; settlement negotiations and mediations, and the drafting of mediation briefing, as well as an in-person mediation with Mr. Wulff; continuing negotiations following the in-person mediation, with and without the aid of the mediator; drafting and analysis of term sheets; drafting and revision of further writings for use in negotiations; drafting and revision of settlement-related documents, including the first and amended settlement agreements; drafting and revising a suitable notice program in this case; research regarding suitable potential *cy pres* recipients; and working with the settlement administrator and Tesla on notice documents and the claim form.

f.     **Motion/settlement approval/hearings:**  Research for, and drafting of, the motion for preliminary approval and related papers; further negotiation and follow-up in response to the Court's requests regarding changes to the proposed order; working with Tesla on revisions to the proposed order; working with the five Plaintiffs in support of the settlement approval process; and research toward, and drafting of, the motion for preliminary approval and the instant motion; and preparation for and argument at the preliminary approval hearing.

Further, additional work remains to be performed.  The final approval hearing is scheduled for October 17, 2018, and class counsel presently estimates that before then, they will need to work approximately 30 additional hours to answer questions posed by class members or the settlement

administrator, to draft and file final approval papers, to review and analyze objections from class

members and to draft responses to those objections as appropriate, and to prepare for argument.

(Loeser Decl., ¶ 15.)

Beyond the final approval hearing, assuming final approval is granted, class counsel presently

estimates an additional 30-40 hours of work will be necessary to attend to the issues that will arise during

administration of the settlement, to field inquiries from class members regarding the settlement and their

claims and benefits, to work with Tesla as appropriate to address any class-member appeals or concerns

under the settlement, and potentially the preparation of filings with the Court in the possible (though

unlikely) event that funds remain to be distributed to a proposed *cy pres* recipient instead of to individual

class members.  (*Id.*)  These are conservative projections; counsel could be required to spend much more

time on any or all of these tasks, as matters develop.

### 3. Counsels' fees are reasonable pursuant to the *Kerr* factors subsumed in the lodestar analysis.

In considering the reasonableness of Plaintiffs' lodestar figure, courts also may consider the

quality of representation, the benefit obtained for the class, and the complexity and novelty of the issues

presented, among other factors.  *Bluetooth*, 654 F.3d at 941-42.  Each of these factors supports Plaintiffs'

lodestar here.

#### (1) Novelty and complexity of the litigation

Given the foregoing history and lack of precedent on several issues; Tesla's many defenses and

deep resources; and questions regarding individual issues, this case was novel and complex.  (*See* Loeser

Decl., ¶ 10.)

#### (2) Skill and experience of class counsel and quality of representation

The "prosecution and management of a complex national class action requires unique legal skills

and abilities."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005).  The courts

consider counsel's skill alongside the quality of work performed by counsel.  *See In re Omnivision Techs.,*

*Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  In this case, success required experienced and skilled

class-action attorneys.  As attested in the declarations cited above, class counsel are members of the bar

with extensive experience in consumer class-action litigation, which they utilized to obtain the best recovery for the class.

The Court also should consider the quality of opposing counsel in evaluating the quality of class counsel's work. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20. Class counsel faced renowned and highly skilled defense attorneys in this matter, with well-deserved reputations for vigorous advocacy in the defense of their clients, including Tesla. *See id.*

### (3) Favorability of result

In a case with numerous legal and technical complexities, and facing a determined, well-financed, and well-represented defendant, Plaintiffs and their counsel were able to achieve a settlement including a $5.4 million cash component and non-monetary relief. This result was genuinely favorable to the class, the vast majority of whose members, given practical realities, truly needed dedicated counsel to advocate for them in a class setting. (*See, e.g.*, Loeser Decl., ¶ 13)

### 4. The presence of a reasonable multiplier further supports the reasonableness of Plaintiffs' fee request.

Furthermore, Plaintiffs seek a reasonable multiplier to reach the overtly reasonable 17.7% of the common fund they seek. Lodestar is presently at $406,912.50 for class counsel, such that the multiplier is 2.36. The presence of this reasonable multiplier further supports the reasonableness of Plaintiffs' request. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (awarding fees in automotive case where settlement was achieved prior to dispositive motions or class certification, with a lodestar cross-check multiplier of 2.63 calculated on the basis of "hours and average billing rate"); *Williams v. SuperShuttle Int'l Inc.*, 2015 WL 685994, at *2 (N.D. Cal. Feb. 12, 2015).

### D. Costs and expenses

The settlement agreement provides that Plaintiffs may seek the recovery of costs and expenses in a combined fee/cost award not to exceed $976,000. (Loeser PA Decl., Ex. A, § V.A.)

Class counsel have incurred costs and expenses in the amount of $14,981.95. These costs and expenses are set forth in the declaration of counsel submitted with this motion, and class counsel's chart is reproduced here. (*See* Loeser Decl., ¶ 16 and Ex. B thereto.)

| Expense Category | Total |
|---|---|
| 10 – Airfare | $ 1,592.80 |
| 15 – Printing/Copies | $   928.75 |
| 50 – Overnight Shipping | $     57.89 |
| 52 – Filing Fees | $   400.00 |
| 53 – Hotel | $   673.70 |
| 55 – Online Services/Legal Research | $   510.30 |
| 59 – Meals | $     59.96 |
| 60 – Messenger/Process Services | $ 1,353.24 |
| 61 – Mediation | $ 8,500.00 |
| 70 – Transportation/Travel Expenses | $   199.68 |
| 71 – Parking | $     30.00 |
| 72 – Court Fees | $   645.63 |
| 90 – Telephone | $     30.00 |
| **Grand Total** | **$14,981.95** |

Class counsel will expend more on behalf of the settlement class before the close of this matter, including airfare and lodging to attend the final approval hearing, and other costs associated with the final approval papers and post-settlement administration costs. Because these sums are unclear at this time, Class counsel will absorb these out of pocket costs from their fee.

All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable. *See Missouri v. Jenkins*, 491 U.S. 274, 286 (1989); *accord Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010); *see also Omnivision*, 559 F. Supp. 2d at 1048 ("[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"). As detailed in the declaration of counsel, Plaintiffs incurred substantial costs on travel (including to hearings and a California mediation), computer-aided research, photocopies, postage, court fees, and telephone charges. These costs were necessarily and reasonably incurred to bring this case to a successful outcome.

**E.      The class representatives each should receive $4,800 incentive awards.**

Finally, Plaintiffs seek service awards to the named Plaintiffs in this matter, as contemplated by the settlement agreement. (*See* Loeser PA Decl., Ex. A, § V.B.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (2009) (citing 4 ALBA CONTE ET AL., NEWBERG ON CLASS ACTIONS § 11:38 (4th ed. 2008)). These awards, generally sought after a settlement has been reached, "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. The Court has discretion to approve

1   incentive awards, and its consideration includes factors such as the amount of time and effort spent by

2   the class representatives, the duration of the litigation, and the personal benefit (or lack thereof) enjoyed

3   by the class representatives as a result of the litigation. *Wilson v. Airborne, Inc.*, 2008 WL 3854963, at *12

4   (C.D. Cal. Aug. 13, 2008).

5       Broadly speaking, the named Plaintiffs have assisted counsel with counsel's investigation,

6   analysis, and prosecution of their potential and actual claims; they have served as field testers and

7   reviewers of the many roll-outs of updates to the Autopilot features, they have assisted in the

8   preparation of pleadings (including the complaints filed in this matter and declarations); settlement

9   negotiations and considerations; and review and analysis of the parties' settlement papers.  (Loeser PA

10  Decl., ¶¶ 15-16; Sheikh Decl., ¶¶ 3-8; Kelner Decl., ¶¶ 3-8; Milone Decl., ¶¶ 3-7; Lamarche Decl., ¶¶ 3-9;

11  Verdolin Decl., ¶¶ 3-5.)  Importantly, Plaintiffs spent extensive time reviewing and reporting on the

12  numerous "over-the-air" updates that Tesla sent to their cars during the pendency of this case, including

13  through to the present.  (*See id.*)  They also have monitored this case on behalf of their fellow putative

14  class members.  (*See id.*)  And some faced obloquy from Tesla's numerous fans.  Sheikh Decl., ¶¶ 5-6;

15  Kelner Decl., ¶ 6; Milone Decl., ¶ 6; Lamarche Decl., ¶ 5; Verdolin Decl., ¶ 5.)

16      $5,000 service awards are presumptively reasonable in this judicial district.  *See, e.g., Camberis v.

17  Ocwen Loan Serv. LLC*, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015) ("As this Court has recognized,

18  . . . as a general matter, $5,000 is a reasonable amount [for service awards].") (citation and internal

19  quotations omitted).  This is so even in cases when there were relatively expected or small recoveries by

20  individual settlement class members.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947-48

21  (approving $5,000 incentive awards where class members would receive $12); *Weeks v. Kellogg Co.*, 2013

22  WL 6531177, *3, 34-37 (C.D. Cal. Nov. 23, 2011) (approving incentive awards of $5,000 per named

23  plaintiff, where settlement provided for the recovery by class members of $5 per box of cereal purchased

24  during the class period, up to a maximum of $15 per class member, all subject to proportional reduction

25  if all eligible claims exceeded the settlement fund); *see also Wren v. RGIS Inventory Specialists*, 2011 WL

26  1230826, at *31-37 (N.D. Cal. Apr. 1, 2011) (making $5,000 service awards to 20 named plaintiffs where

27  "average award to class members [was] $207.69").  Here, where Plaintiffs seek less ($4,800), and the

28

average recovery is approximately $134, the argument is even stronger than in cases such as *Online DVD* and *Weeks* where the expected class-member benefit was expected to be much smaller.  Also, the awards sought in this case are modest compared with incentive awards in other cases.  *See, e.g.*, *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) ($25,000 award); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ($300,000 award).

Here, given the valuable and time-consuming aid rendered to the settlement class by each of the named Plaintiffs in this complex case, Plaintiffs respectfully submit that the requested awards are fair and reasonable, and that they ought to be awarded.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask that the Court grant the foregoing requests for reasonable service awards, attorneys' fees, costs, and expenses.

DATED:  August 23, 2018

HAGENS BERMAN SOBOL SHAPIRO LLP

By ____/s/ Thomas E. Loeser_____
        Thomas E. Loeser
Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
robl@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Attorneys for Plaintiffs and*
*the Proposed Class*

# CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2018, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all ECF registrants.

By _____ */s/ Thomas E. Loeser* _____
THOMAS E. LOESER