Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEAN SHEIKH, JOHN KELNER, TOM MILONE, DAURY LAMARCHE, and MICHAEL VERDOLIN, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>                              Defendant. | No. 5:17-cv-02193-BLF<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        October 17, 2018<br>Time:        9:00 a.m.<br>Judge:      Hon. Beth Labson Freeman<br>Dept.:       Courtroom 3, 5th Floor |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 17, 2018, at 9:00 a.m., or as soon thereafter as may be heard in the courtroom of the Honorable Beth Labson Freeman, United States District Court for the Northern District of California, San Jose Division, Plaintiffs and Class Representatives Dean Sheikh, John Kelner, Tom Milone, Daury Lamarche, and Michael Verdolin, will and hereby do move the Court, pursuant to Fed. R. Civ. P. 23(e), for an order finally approving the Settlement they have reached with defendant Tesla, Inc., and:

1.      Finding that the Settlement is fair, reasonable, and adequate, within the meaning of Fed. R. Civ. P. 23(e)(2);

2.      Finding that the Class Notice provided to the Settlement Class was directed in a reasonable manner to all Settlement Class Members who would be bound by the Settlement, Fed. R. Civ. P. 23(e)(1); that it constitutes due, adequate, and sufficient notice; and that it comports with the requirements of due process;

3.      Finally approving the method set forth in the Settlement Agreement and Release for distributing the monetary relief available thereunder;

4.      Reserving exclusive and continuing jurisdiction over the Settlement and any disputes regarding it;

5.      Directing that a final judgment of dismissal be entered between the Plaintiffs and the Defendant; and

6.      Reiterating and confirming the appointment of Plaintiffs as Class Representatives and Hagens Berman Sobol Shapiro LLP, by Steve W. Berman, Thomas E. Loeser, and Robert F. Lopez, as Class Counsel.

The grounds for this motion are that the proposed settlement is fair, adequate, and reasonable; that the notice plan, which was the best plan practicable under the circumstances, has been effected per the Court's order and otherwise comports with due process and applicable law; and that the other requested relief is well-grounded in law and fact, as set forth in the attached memorandum.  This motion is based on the declarations submitted herewith, with exhibits; the attached memorandum in support of

1    Plaintiffs' motion; the pleadings and papers on file in this action; and the oral argument of counsel to be

2    presented at the hearing on this motion.

3    DATED:  October 5, 2018                 HAGENS BERMAN SOBOL SHAPIRO LLP

4
                                             By ____/s/ *Thomas E. Loeser*_____
5                                                   Thomas E. Loeser
                                             Steve W. Berman (*pro hac vice*)
6                                             Thomas E. Loeser (SBN 202724)
                                             Robert F. Lopez (*pro hac vice*)
7                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1301 Second Avenue, Suite 2000
8                                             Seattle, WA 98101
                                             Telephone: (206) 623-7292
9                                             Facsimile: (206) 623-0594
                                             steve@hbsslaw.com
10                                            toml@hbsslaw.com
                                             robl@hbsslaw.com
11
                                             *Class Counsel*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED .......................................................1

III.  STATEMENT OF RELEVANT FACTS ..................................................................2

    A.   Background facts .............................................................................................2

    B.   Plaintiffs and their claims ..............................................................................3

    C.   Proceedings to-date ........................................................................................4

    D.   The Settlement ................................................................................................4

        1.   Mediation ............................................................................................4

        2.   Settlement Class definition and class period .....................................5

        3.   Relief to the Settlement Class ............................................................5

            a.   Monetary relief .......................................................................5

            (1)   Generally .................................................................................5

            (2)   Direct payments to Settlement Class Members.......................6

            b.   Non-monetary relief ...............................................................7

            c.   Secondary Distribution and Residual......................................7

        4.   Notice, opt-out procedures, objections, and release ..........................7

        5.   Service awards and attorneys' fees, costs, and expenses....................8

    E.   Preliminary approval, notice, and subsequent proceedings .............................9

IV.  ARGUMENT ..............................................................................................................9

    A.   The Court should grant final approval of the Settlement. ....................................9

        1.   The Settlement meets the standards for final approval. .......................10

            a.   The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation...................10

            b.   The settlement is fair, adequate, and reasonable...................11

    B.   The notice program was extensive, exceeded precedent, and satisfied applicable standards. ...................................................................................13

    C.   Plaintiffs meet the requirements for class certification. .....................................14

1          1.    The Rule 23(a) requirements are met. .........................................................15

2               a.    Numerosity ...............................................................15

3               b.    Commonality .............................................................15

4               c.    Typicality .................................................................16

5               d.    Adequacy ..................................................................17

6          2.    Because common questions predominate, and a class action is
7               the superior method to adjudicate class members' claims, the
                Court should certify the proposed Rule 23(b)(3) Settlement
8               Class..........................................................................18

9                a.    Common questions predominate. ..............................18

10             b.    Class treatment is the superior method for
                adjudicating claims of members of the proposed
11               Settlement Class. .....................................................20

12     D.    Objections ...............................................................................20

13          1.    Yost objection ..........................................................20

              2.    Haines "objection" ...................................................23

14 V.    CONCLUSION...........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................................19

*In re Anthem, Inc. Data Breach Litig.,*
2018 WL 3872788 (N.D. Cal. Aug. 15, 2018) .................................................................. 19, 20

*Burden v. SelectQuote Ins. Servs.,*
2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ................................................................... 9, 16

*Chavez v. WIS Holding Corp.,*
2010 WL 11508280 (S.D. Cal. June 7, 2010) .......................................................................10

*Churchill Vill., L.L.C. v. GE,*
361 F.3d 566 (9th Cir. 2004) ........................................................................................10, 11, 13

*Edwards v. Nat'l Milk Producers Fed'n,*
2017 WL 3616638 (N.D. Cal. June 26, 2017) .................................................................. 22, 23

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ................................................................................................................14

*Evon v. Law Offices of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) ................................................................................................17

*Fraley v. Facebook, Inc.,*
966 F. Supp. 2d 939 (N.D. Cal. 2013) ...................................................................................13

*Franklin v. Kaypro Corp.,*
884 F.2d 1222 (9th Cir. 1989) ................................................................................................10

*In re Google Referrer Header Privacy Litig.,*
87 F. Supp. 3d 1122 (N.D. Cal. 2015) ...................................................................................12

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................................10, 11, 15, 18

*In re High-Tech Emp. Antitrust Litig.,*
2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ........................................................................13

*In re Hyundai & Kia Fuel Econ. Litig.,*
897 F.3d 1003 (9th Cir. 2018) ................................................................................................19

*Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor v. I.N.S.,*
306 F.3d 842 (9th Cir. 2002) ..................................................................................................15

*Jacob v. Pride Transp., Inc.*,
    2018 WL 1411136 (N.D. Cal. Mar. 21, 2018) ......................................................... 16, 18

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................... 10, 21

*Marilley v. Bonham*,
    2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ................................................................ 16

*Mendoza v. Hyundai Motor Co., Ltd.*,
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ................................................................ 15

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................... 21, 22

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................ 10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................ 14

*In re Qualcomm Antitrust Litig.*,
    2018 WL 4680214 (N.D.Cal., 2018) ......................................................................... 18

*Radcliffe v. Experian Info. Sols., Inc.*,
    715 F.3d 1157 (9th Cir. 2013) .............................................................................. 22

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................... 10, 21

*Shea v. Kahuku Hous. Found., Inc.*,
    2011 WL 1261150 (D. Haw. Mar. 31, 2011) ................................................................. 23

*Shelby v. Two Jinns, Inc.*,
    2017 WL 6347090 (C.D. Cal. Aug. 2, 2017) ................................................................ 14

*Taylor v. Universal Auto Group I, Inc.*,
    2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ............................................................. 16

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................ 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................................... 18

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...........................................................................................10

*Weeks v. Kellogg Co.*,
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ..................................................................21

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................................................................21

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ..................................................................................................................*passim*

Manual for Complex Litigation § 13.14 (4th ed. 2004) ..............................................................9

Manual for Complex Litigation § 21.312 (4th ed. 2004) ..........................................................13

William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:12 (5th ed.) .................................15

William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:39 (5th ed.) ..................................9

1

## I.   INTRODUCTION

2       Plaintiffs and Class Representatives Dean Sheikh, John Kelner, Tom Milone, Daury Lamarche,

3  and Michael Verdolin move for final approval and related relief regarding their nationwide-class

4  Settlement with the Defendant, Tesla, Inc.

5       Plaintiffs filed suit because in their view, Tesla over-promised with respect to the delivery of

6  features in its Enhanced Autopilot (EA) package.  While Tesla has continued to deliver package features,

7  the Settlement provides purchasers of the EA package with money to compensate for the delays they

8  have endured.

9       The Settlement Administrator provided direct notice to all Settlement Class Members, and only

10  one has submitted a true objection to any term.  Further, a mere 94 of the nearly 33,000 Settlement Class

11  Members opted out.  These are infinitesimally small numbers that speak to the reasonableness of the

12  Agreement and its implicit approval by the Settlement Class Members.

13       Plaintiffs respectfully ask for final approval of the Parties' compromise so that Settlement Class

14  Members—who were not required to file claims to receive Settlement benefits—can receive their money

15  from the Settlement Fund.

16

## II.   STATEMENT OF ISSUES TO BE DECIDED

17       Should the Court grant final approval to the Parties' Settlement and:

18       1.     Find that the Settlement is fair, reasonable, and adequate, within the meaning of Fed. R.

19  Civ. P. 23(e)(2);

20       2.     Find that the Class Notice provided to the Settlement Class was directed in a reasonable

21  manner to all Settlement Class Members who would be bound by the Settlement and its Release of

22  Claims, Fed. R. Civ. P. 23(e)(1); that it constitutes due, adequate, and sufficient notice; and that it

23  comports with the requirements of due process;

24       3.     Approve the method set forth in the Settlement Agreement and Release (Settlement

25  Agreement) for distributing the monetary relief available under it;

26       4.     Reserve exclusive and continuing jurisdiction over the Settlement and any disputes

27  regarding it;

28

1    5.    Direct that a final judgment of dismissal be entered between the Plaintiffs and the

2    Defendant; and

3    6.    Confirm Plaintiffs Dean Sheikh, John Kelner, Tom Milone, Daury Lamarche, and

4    Michael Verdolin as Class Representatives and Hagens Berman Sobol Shapiro LLP, by Steve W.

5    Berman, Thomas E. Loeser, and Robert F. Lopez, as Class Counsel?

6                        **III.    STATEMENT OF RELEVANT FACTS**

7    **A.    Background facts**

8    Tesla sells battery-powered electric vehicles in the United States and throughout the world.

9    Beginning in or about October 2016, Tesla announced its new Hardware 2 ("HW2") Model S and Model

10    X vehicles.  Tesla also announced that it would release the next generation Enhanced Autopilot for

11    HW2 vehicles, which consumers had the option to purchase for $5000.[1]

12    Enhanced Autopilot added new capabilities.  As Tesla's website explained:  "Your Tesla will

13    match speed to traffic conditions, keep within a lane, automatically change lanes without requiring driver

14    input, transition from one freeway to another, exit the freeway when your destination is near, self-park

15    when near a parking spot and be summoned to and from your garage."

16    When Tesla announced Enhanced Autopilot in October 2016, the company stated that software

17    for these features was "expected to complete validation and be rolled out to your car via an over-the-air

18    update in December 2016, subject to regulatory approval."  (Tesla autopilot webpage, available at

19    http://web.archive.org/web/20170123045718/https://www.tesla.com/autopilot (capture from Jan. 23,

20    2017) (last visited Mar. 20, 2017).)  On January 24, 2017, Tesla updated its website to state that "Tesla's

21    Enhanced Autopilot software has begun rolling out and features will continue to be introduced as

22    validation is completed, subject to regulatory approval."

23    Beginning in January 2017, Tesla began rolling out the Enhanced Autopilot features.  The

24    Enhanced Autopilot features were improved and augmented over time.  Updates were released in

25    February, March, May, June, and July, 2017.  As of September 2017, all of the Enhanced Autopilot

26    features had been delivered with the exception of On-ramp to Off-ramp and Smart Summon.

27    _____

28    [1] Consumers could also purchase Enhanced Autopilot later for $6000.

1    All Tesla HW2 vehicles are equipped with standard safety features.  Tesla's website describes its

2  "standard safety features" to include: (1) Automatic Emergency Braking; (2) Front Collision Warning; (3)

3  Side Collision Warning; and (4) Auto High Beams.  In October 2016, Tesla's website stated that the

4  safety features would "become available in December 2016 and roll out through over-the-air updates."

5  On January 24, 2017, Tesla's website was updated to state that the standard safety features "have begun

6  rolling out through over-the-air updates."  The standard safety features were not available in December

7  2016, but were rolled out beginning in January 2017; the rollout was completed in May 2017.[2]

8  **B.    Plaintiffs and their claims**

9    Plaintiff Dean Sheikh is a resident of Denver, Colorado; Plaintiff John Kelner is a resident of

10  Davie, Florida; Plaintiff Tom Milone is a resident of Jackson, New Jersey; Plaintiff Daury Lamarche is a

11  resident of Marlton, New Jersey; and Plaintiff Michael Verdolin is a resident of Chula Vista, California.

12  (Dkt. No. 24, ¶¶ 8, 11, 14, 17, 26.)  Each ordered a Tesla vehicle, as well as the optional $5,000

13  Enhanced Autopilot package, for purchase or lease.  (*Id.*)  (Mr. Verdolin had previously ordered his

14  vehicle with the $2,500 extra-cost Autopilot option, but Tesla delivered it with EA.  (*Id.*, ¶ 27.)  Each

15  Plaintiff took delivery of his vehicle in December 2016.  (*Id.*, ¶¶ 9, 12, 15, 1, 27.)

16    However, when Tesla delivered Plaintiffs' vehicles, the Enhanced Autopilot and standard safety

17  features of the cars were not operational.  The features became operational and were improved as the

18  software for the features was rolled out over time.  As of May 2017, the full suite of standard safety

19  features was operational.  As of September 2017, Enhanced Autopilot was fully functional, with the

20  exception of On-ramp to Off-ramp and Smart Summon.

21    Plaintiffs alleged that Tesla's delay in providing the features violated California's Unfair

22  Competition Law (UCL), Consumers Legal Remedies Act (CLRA), and False Advertising Law (FAL) on

23  behalf of a nationwide class of Tesla owners and lessees.  (*E.g.*, *id.*, ¶¶ 121-28; 129-143; 144-51.)

24  Plaintiffs also asserted claims under California's common law.  Alternatively, Plaintiffs pled consumer

25  protection and other claims under the laws of the states of each of the Class Representative Plaintiffs.

26  (*E.g.*, *id.*, ¶¶ 165-341.)

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [2] The speed at which Automatic Emergency Braking was enabled was increased in June 2017.

**C.      Proceedings to-date**

Following an investigation into the technology and real-world performance of Tesla vehicles and Enhanced Autopilot, Plaintiffs filed their original Complaint on April 19, 2017.  (Dkt. No. 1.)  On April 26, 2017, Plaintiffs filed an Amended Complaint, adding a California plaintiff and causes of action under California law.  (Dkt. No. 6.)  After further investigation, including review of Plaintiffs' actual experiences with Enhanced Autopilot, Plaintiffs filed their Second Amended Complaint on July 19, 2017.  (Dkt. No. 24.)

Following Plaintiffs' Second Amended Complaint, Tesla agreed to provide preliminary discovery to Plaintiffs as a prerequisite to possible early mediation discussions.  (*See* Declaration of Thomas E. Loeser in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (Dkt. No. 44) ("Loeser Prelim. Appr. Decl."), ¶ 2.)  Following review of this discovery material, and further investigation of the claims and then-current status of Enhanced Autopilot and the standard safety features, Plaintiffs and Tesla agreed to engage in an early mediation, which was set for November 2, 2017, with Randall Wulff at Mr. Wulff's Oakland, California offices.  (*See id.*, ¶ 3.)

**D.      The Settlement**

After Plaintiffs filed their Second Amended Complaint, Tesla agreed to provide preliminary discovery to Plaintiffs as a prerequisite to possible settlement discussions.  (*See* Loeser Prelim. Appr. Decl., ¶ 2.)

**1.      Mediation**

The Parties exchanged detailed mediation briefing and attended a full-day mediation session with Mr. Wulff on November 2, 2017.  (*See* Loeser Prelim. Appr. Decl., ¶ 4.)  Through discussions and with the active assistance of the mediator, the Parties agreed on the contours of a settlement that would provide payments to owners and lessees of affected Model S and Model X Tesla vehicles who purchased Enhanced Autopilot with their vehicles, and that would be based upon the dates such vehicles were ordered and the dates they were delivered.  In essence, the agreed settlement would provide a variable payment based upon Tesla's website representations at the time a car was ordered, and the amount of time that the owner had the car prior to September 2017, when Enhanced Autopilot was substantially delivered.

As is often the case in complex settlements involving complex products and legal claims, the devil was in the details.  The Parties spent months following the initial mediation in detailed discussions, often several days per week, including reviewing and assessing confirmatory discovery concerning Tesla's technologies.  (*See* Loeser Prelim. Appr. Decl., ¶ 5.)  Additionally, Plaintiffs' counsel engaged in multiple discussions with Plaintiffs and other Tesla owners and lessees concerning improvements and developments of the Enhanced Autopilot and standard safety features, as these were periodically rolled out "over-the-air" to their cars.  (*See id.*)  Ultimately, on April 27, 2018, the Settlement was finalized and sent to Plaintiffs and Defendant for execution.  (*See id.*, ¶ 5.)

### 2. Settlement Class definition and class period

On May 15, 2018, the Parties signed their Settlement Agreement.  (Loeser Prelim. Appr. Decl.*,* ¶ 7.)  It defines the Settlement Class as:

> All U.S. residents who purchased Enhanced Autopilot in connection with their purchase or lease of a Tesla Hardware 2 Model S or Model X vehicle delivered to them on or before September 30, 2017.

(Loeser Prelim. Appr. Decl., Ex. A, § I.A.)

The Settlement Class is the Nationwide Enhanced Autopilot Subclass proposed in the Second Amend Complaint.  (*Compare* Loeser Prelim. Appr. Decl., Ex. A, § I.A., *with* Dkt. No. 24, ¶ 110.)  This class has 32,410 members.  (Declaration of Lana Lucchesi Re: Notice Procedures ("Lucchesi Decl."), ¶ 9.)

The class period runs from the date the first HW2 Model S or Model X was ordered through September 30, 2017, the date by which the parties agree that Enhanced Autopilot was substantially delivered.  (Loeser Prelim. Appr. Decl., Ex. A, § I.A.)  The Settlement does not require a claims process; *all Settlement Class Members who do not opt-out of the Settlement will be sent a check for their portion of the Settlement fund.*  (*Id.*, § II.B.)

### 3. Relief to the Settlement Class

#### a. Monetary relief

##### (1) Generally

The Settlement provides for a Settlement Fund of $5,415,280.00 in non-reversionary monetary relief.  (*Id.*, Ex. A, § II.A.)   Based on discovery and analysis, including representations by Tesla,

Enhanced Autopilot features were continuously rolled out and updated commencing in January 2017. Rollout of the standard safety features was complete in May 2017.  As of September 30, 2017, Enhanced Autopilot features were substantially complete on all HW2 Tesla Model S and Model X vehicles.  As part of the Settlement, Tesla has affirmed its commitment to release the remaining Enhanced Autopilot features (On-ramp to Off-ramp and Smart Summon).  The Settlement Agreement provides payments intended to compensate Tesla owners for the delay between the delivery of their vehicles and the implementation of the Enhanced Autopilot features.  The Settlement fund will be distributed to the Settlement Class net of: attorneys' fees, costs, and expenses (if approved); and Service Awards to the five proposed Class Representatives (if approved).  (*Id.*, Ex. A, §§ II.A.1; II.A.3; V.)  Separately and in addition to the Settlement Fund, Tesla agreed to pay the costs of Class Notice and settlement administration. (*Id.*, Ex. A, § II.A.3).  Plaintiffs and their counsel have endorsed the value and reasonableness of this proposed Settlement.  (*Id.*, ¶ 11.)

### (2)    Direct payments to Settlement Class Members

To reiterate: the proposed Settlement establishes direct payments to class members, without the need for filing claims.  (*Id.*, Ex. A, §§ II.B; IX.C.)  Settlement Class Members will be paid a portion of the Settlement Fund based upon the date that they ordered their affected vehicle and the date that they took delivery of the vehicle, per the following.

| Month class member took delivery | Oct-16 | Nov-16 | Dec-16 | Jan-2017 | Feb-2017 | Mar-2017 | Apr-2017 | May-2017 | Jun-2017 | Jul-2017 | Aug-2017 | Sep-2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class members who purchased prior to January 24, 2017 | $280 | $280 | $280 | $280 | $225 | $200 | $150 | $125 | $100 | $75 | $50 | $25 |
| Class members who purchased January 24, 2017 or later | NA | NA | NA | $210 | $170 | $150 | $115 | $95 | $75 | $55 | $40 | $20 |

The payments set forth in the table above are approximate and could change based upon whether and the extent to which the Court approves Plaintiffs' requests for service awards and attorneys' fees and costs.

**b.      Non-monetary relief**

Also, as part of the Settlement, Tesla has reaffirmed its commitment to release any Enhanced Autopilot features that as of the Effective Date are not already released in Tesla HW2 Vehicles.

**c.      Secondary Distribution and Residual**

The net Settlement Fund (after payment of service awards and attorneys' fees and costs, to the extent approved by the Court) will be distributed in its entirety to Settlement Class Members via check. To the extent any such checks are uncashed or undeliverable, the Settlement Agreement provides for a second distribution to recipients of all uncashed checks if the resulting amount per Settlement Class Member would equal or exceed $15.  The Settlement Agreement provides that any residual after the second distribution (or the first distribution if such residual would result in a per-Settlement Class Member payment of less than $15), will be donated to the Ohio State University Center for Automotive Research and/or Texas A&M Transportation Institute, Center for Transportation Safety.  (*See id.*, Ex. A, § IV.3.C.b.)  Each has national reach and a reputation for advanced work in automobile sustainability, safety and efficiency.  (*See id.*, ¶ 12.)

**4.      Notice, opt-out procedures, objections, and release**

The Parties' Settlement provided for robust direct mail notice based on Tesla's records of mailing addresses for all class members.  (*Id.*, Ex. A, § IV.)

The notice plan called for the Settlement Administrator to establish and maintain a toll-free telephone number, which Settlement Class Members could call to request copies of the Class Notice. The Settlement Administrator also was tasked with establishing and maintaining a settlement website, at the address www.autopilotsettlement.com.  The Parties agreed that the settlement website would include, without limitation, the Class Notice, copies of the Complaint, the Settlement Agreement, Frequently Asked Questions, and the Toll-Free Number.  The Toll-Free Number and the Settlement Website were to be (and were) fully operative on or before the first date notice was mailed to the Settlement Class Members.  (*See id.*, Ex. A, § IV.B.)  CAFA notice was to be effected (and was).  (Lucchesi Decl., ¶¶ 3-5.) In short, the Settlement Agreement was designed to provide the best notice practicable under the

circumstances.  (Loeser Prelim. Appr. Decl., ¶ 13.)  Costs of Notice are being paid by Tesla, in addition to the Settlement Fund, per the Parties' compromise.  (*Id.*, Ex. A, § II.A.3.)

The long-form notice (since disseminated) described the material terms of the Settlement and the procedures that Settlement Class Members were to follow in order to object or opt-out of the Settlement.  (*See id.*, Ex. A (Notice attached as Exhibit A to the Settlement Agreement).)  Any Settlement Class Member who wished to be excluded from the Settlement need only opt-out by making a timely request in writing to the Settlement Administrator.  (*See* Procedural Guidance for Class Action Settlements, United States District Court, Northern District of California, available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited October 3, 2018).)   The due date for these was September 6, 2018.  Preliminary Approval Order (Dkt. No. 49) ("Prelim. Appr. Order"), ¶¶ 13, 17.

Any objections were to be filed directly with the Court.  Prelim. Appr. Order, ¶ 17.  Opt-out requests were to be filed with the Settlement Administrator.  Prelim. Appr. Order, ¶ 13.

If the Court grants final approval of the Settlement, then the Settlement Class Members who have not excluded themselves from the Settlement Class will be deemed to have released all Released Claims against the Released Parties.  (Loeser Prelim. Appr. Decl., Ex. A, § VI.)  The Released Claims are those "arising from or relating to the allegations in the Complaint and all complaints filed in this Action regarding Enhanced Autopilot and safety features. . . ."  (*Id.*, Ex. A, § VI.B.1.)

### 5.    Service awards and attorneys' fees, costs, and expenses

The Parties agreed that Plaintiffs could apply for Service Awards of no more than $4,800 for each of the five Plaintiffs.  (*Id.*, Ex. A, § V.B.)  Plaintiffs have now done so, citing the Class Representatives' efforts on behalf of the proposed class.  (*E.g.*, *id.*, ¶¶ 15-16; Declaration of Thomas E. Loeser in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives ("Loeser Fee and Service Award Decl.") (Dkt. No. 56) at 17; Dkt. Nos. 57-61 (Class Representative Declarations)).  Finally, each Plaintiff will be entitled to the same Settlement benefits, subject to the same conditions, as any other Settlement Class Member.  (Loeser Prelim. Appr. Decl., ¶ 17.)

1    As for Plaintiffs' attorneys' fees, costs, and expenses, the Settlement Agreement contemplates

2    that Plaintiffs will make a request for these by motion (which Plaintiffs have now done).  (*Id.*, ¶ 18.)

3    Tesla reserved the right to oppose Plaintiffs' motion to the extent it exceeds the amount of $976,000

4    (which it did not).  (*See id.*, Ex. A, § V.A.)  Reimbursement for Plaintiffs' costs and expenses were to be

5    paid from the fixed request set forth above.  (*Id.*, Ex. A, § V.A.; *id.*, ¶ 18.)  Should the Court award fees,

6    costs, and expenses of $976,000, this would represent 18% of the Settlement Fund.

7    **E.    Preliminary approval, notice, and subsequent proceedings**

8    On June 8, 2018, the Court granted Plaintiffs' motion for preliminary approval of the Settlement.

9    *See generally* Prelim. Appr. Order.  Notice followed, as further described below.

10   On August 23, 2018, Plaintiffs filed their motion for service awards, attorneys' fees, costs,

11   expenses.  (Dkt. No. 55.)

12   **IV.    ARGUMENT**

13   **A.    The Court should grant final approval of the Settlement.**

14   Approval of a class-action settlement proceeds through two stages: preliminary approval and

15   final approval, with notice in-between.  *See* Manual for Complex Litigation ("MCL") § 13.14 (4th ed.

16   2004) ("This [approval of a settlement] usually involves a two-stage procedure.  First, the judge reviews

17   the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If

18   so, the final decision on approval is made after the hearing."); *see also id.* § 21.632 ("Review of a proposed

19   class action settlement generally involves two hearings.  First, counsel submit the proposed terms of

20   settlement and the judge makes a preliminary fairness evaluation. . . .") (footnote omitted); William B.

21   Rubenstein, NEWBERG ON CLASS ACTIONS § 13:39 (5th ed.) (discussing the process of preliminary

22   approval, notice, and final approval).  Now that that the Court has granted preliminary approval and the

23   Settlement Administrator has disseminated notice in accordance with the Court's order, it is time to

24   consider Plaintiffs' request for final approval.

25   Settlements are to be encouraged in class-action lawsuits.  The Court, however, must examine

26   "whether [the] proposed settlement is 'fundamentally fair, adequate, and reasonable.'"  *Burden v.*

27   *SelectQuote Ins. Servs.*, 2013 WL 1190634, at *2 (N.D. Cal. Mar. 21, 2013) (citing *Staton v. Boeing Co.*, 327

28   F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998))).

1   The instant Settlement passes that test, providing millions of dollars of relief for claims that would face a

2   myriad of credible substantive and procedural defenses if litigated to the end.

3        As the Ninth Circuit has stated, "there is an overriding public interest in settling and quieting

4   litigation.  This is particularly true in class action suits. . . ."  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229

5   (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Churchill*

6   *Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th

7   Cir. 1995); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ("The law favors the

8   compromise and settlement of class action suits.") (citations omitted).  Settlement is desirable in class

9   action suits because they are "an ever increasing burden to so many federal courts and [] frequently

10  present serious problems of management and expense."  *Van Bronkhorst*, 529 F.2d at 950.

11       Additionally, courts should give proper deference to parties' agreed settlements.  *E.g., Rodriguez v.*

12  *West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private

13  consensual decision of the parties.") (citing *Hanlon*, 150 F.3d at 1027).  "[T]he court's intrusion upon what

14  is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited

15  to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

16  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole,

17  is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (quotations omitted); *see also,*

18  *e.g., Chavez v. WIS Holding Corp.*, 2010 WL 11508280, at *1 (S.D. Cal. June 7, 2010) ("The Court gives

19  weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec.*

20  *Litig.*, 47 F.3d at 378).

21       **1.    The Settlement meets the standards for final approval.**

22            **a.    The Settlement is the product of well-informed, vigorous, and thorough
                        arm's-length negotiation.**

23       In contemplating final approval of a class settlement, the Court should assure itself that "the

24  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . .

25  . ."  *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted).  Here, the Settlement was achieved

26  only after much investigation; research; informal discovery; analysis; consultation; an in-person

27  mediation session with a well-respected mediator, Randall Wulff; and further arm's-length negotiation

28

MOTION FOR FINAL APPROVAL - 10
Case No.: 5:17-cv-02193-BLF
010681-11 1069162 V1

1   beyond that.  (Loeser Prelim. Appr. Decl., ¶¶ 4-8.)  Further, the Plaintiffs (and the Defendant) were

2   represented throughout by attorneys with extensive experience in class-action and consumer litigation.

3   (*Id.*, ¶ 19 and Ex. D.)  Plaintiffs' experienced counsel endorse the Settlement reached on behalf of the

4   class.  (*Id.*, ¶ 19.)

5          Because of their history with this matter, and their experience, Plaintiffs' counsel were situated to

6   evaluate the strength and weakness of Plaintiffs' case.  Far from being the product of anything

7   inappropriate, the settlement at issue is the result of much hard-fought and adversarial effort, such that it

8   is worthy of final approval by the Court.  *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement

9   where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of

10  information).

11               **b.        The settlement is fair, adequate, and reasonable.**

12          Rule 23(e) requires a district court to ensure that a proposed class action settlement is fair,

13  adequate, and reasonable.  *E.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)

14  ("[T]he universally applied standard is whether the settlement is fundamentally fair, adequate and

15  reasonable.") (citations omitted).  In assessing whether a settlement is fair, adequate, and reasonable, the

16  court must weigh a number of factors, including:

17          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
            duration of further litigation; (3) the risk of maintaining class action status throughout
18          the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and
            the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of
19          a governmental participant; and (8) the reaction of the class members to the proposed
            settlement.
20
21  *Churchill Village*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)

22  ("This list is not exclusive and different factors may predominate in different factual contexts.") (citing

23  *Officers for Justice*, 688 F.2d at 625).  Consideration of these factors supports final approval of the

    settlement.

24          *First, second, third, fifth, and sixth factors.*  Plaintiffs pled a set of claims against Tesla based on state

25  consumer protection statutes; common-law fraud; and unjust enrichment theories.  (Amended Compl.

26  (Dkt. No. 6, ¶¶ 158-312.)  Their counsel have extensive experience in consumer class actions, and they

27  possessed (and possess) the resources and commitment necessary to prosecute this case to the end.

28

(Loeser Fee and Service Award Decl., ¶¶ 3-5.)  Having received informal-discovery production as described, and having studied and analyzed the material produced, in addition to engaging in consultations with their technologically savvy clients, they were poised to proceed based on the liability and damages theories they had developed.  (Loeser Prelim. Appr. Decl., ¶¶ 2-5, 15, 19; Loeser Fee and Service Award Decl., ¶¶ 13-14; Declaration of Thomas E. Loeser in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Loeser Final Appr. Decl."), ¶ 2.)

Nonetheless, all litigation bears risks, and Tesla was thoroughly committed to its defense, which was founded on the proposition that even though it had released certain features later than it had expected, it had not engaged in any wrongful conduct.  (*Id.*, ¶ 3.)  Tesla also was represented by highly skilled and well-experienced counsel who articulated what they perceived as grave weaknesses in Plaintiffs' case.  (*See id.*, ¶ 4.)  Tesla advised that if this matter were litigated, it would move to dismiss.  (*Id.*)  It also promised a vigorous opposition to class certification; then one or more further dispositive motions; and following that, if needed, strong defenses at trial.  (*Id.*)

This was not all bluster.  Plaintiffs themselves were aware of challenges to their case, including variations in state law that might make it difficult to certify a contested class.  (*Id.*, ¶ 5.)

Additionally, Plaintiffs had to consider the facts as they had come to know them following their further investigation, including Tesla's provision of most of the promised features over time.  According to Tesla, this, especially when coupled with its promise to release the remaining two features, could moot Plaintiffs' case.  (*Id.*, ¶ 6.)  And while Plaintiffs could counter this with the fact that Tesla did not deliver *as promised and represented*, nonetheless, it was a defense they had to take seriously.

*Fourth factor.*  With the aid of Mr. Wulff as mediator, Plaintiffs achieved a settlement that offers benefits to the 32,410 member Settlement Class in the amount of $5,415,280 (including attorneys' fees, costs, and service awards—or approximately $1 million less if those are awarded as requested by Plaintiffs).  This is a fine real-world result when weighed against the strengths and challenges of Plaintiffs' case.  *Cf., e.g., In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1130-31 (N.D. Cal. 2015) (granting final approval of settlement with $8.5 million to 129 million member class); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (granting final approval of settlement

1   with $9 million to 62 million class members); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 949 (N.D. Cal.

2   2013) (granting final approval of settlement with $20 million to 124 million class members).

3   *Seventh factor.* Further, while there were no government participants in this action, the Settlement

4   Administrator notified the U.S. attorney general and state and District of Columbia attorneys general of

5   the Settlement, and none has objected. (Lucchesi Decl., ¶¶ 3-5.) This, too, speaks to the fairness,

6   reasonableness, and adequacy of the Settlement, especially given the specialty press attention to this case.

7   (*See, e.g.*, Loeser Final Appr. Decl., ¶ 7.)

8   *Eighth factor.* As for the reaction of class members, the Settlement Administrator advises that the

9   Settlement Class includes 32,410 members (after de-duplicating), per the list that Tesla provided to it.

10   (Lucchesi Decl., ¶¶ 6-7.) Of these, only 94 individuals opted out by the published deadline of September

11   6, 2018. (Lucchesi Decl., ¶ 12.) This represents well under one-third of one percent (0.29%) of

12   Settlement Class Members. Also, only two class members filed objections, Dkt. Nos. 53 and 54,

13   representing under one-one-hundreth of a percent (0.0062%) of the Settlement Class. This number dips

14   to half of that (.0030%) when one considers that the second of the two objections, Dkt. No. 54, is not a

15   true objection, as explained below.

16   Both objections were submitted by *pro se* individuals, with the only true objection filed by an

17   attorney. Plaintiffs address both "objections" below. But the paucity of opt-outs and objections speaks

18   to a positive class reaction to the settlement, further supporting its final approval. *E.g.*, *Churchill Vill.*,

19   361 F.3d at 577 (affirming approval of settlement where 45 of 90,000 class members objected to the

20   settlement and 500 class members opted out); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at

21   *3 (N.D. Cal. Sept. 2, 2015) (finding indicia of approval where 11 class members out of 64,466

22   submitted objections and where less than 0.9% opted out).

23   **B.     The notice program was extensive, exceeded precedent, and satisfied applicable standards.**

24   "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members

25   who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . .'" MCL

26   § 21.312, at 293. In order to protect the rights of absent class members, the Court must direct the best

27

28

MOTION FOR FINAL APPROVAL - 13
Case No.: 5:17-cv-02193-BLF
010681-11 1069162 V1

1    notice practicable to class members.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985);

2    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

3          Here, the Court ordered such a direct-notice plan.  Prelim. Appr. Order, ¶¶ 9-10.  And the

4    Settlement Administrator effected it by way of mailing a copy of the Summary Notice (Notice) to all

5    Settlement Class Members based on Tesla's records of their current addresses.  (Lucchesi Decl., ¶¶ 6-9.)

6    The process entailed updating addresses before the first round of mailings by use of the National

7    Change of Address database.  (*Id.*, ¶ 6.)  It also included follow-up notice to 401 class members whose

8    initial mailings were returned by the U.S. Postal Service with forwarding addresses.  (*Id.*, ¶ 9.)  Ultimately,

9    per the Settlement Administrator, Notice reached 98.61% of Settlement Class members (*Id.*, ¶ 9.)  Also,

10   the Settlement Administrator created a Settlemennt website that went live on July 20, 2019.  (*See id.*, ¶

11   11.)

12         The court approved remarkably similar notice in *Shelby v. Two Jinns, Inc.*, 2017 WL 6347090, at *2

13   (C.D. Cal. Aug. 2, 2017).  There, as here, KCC was the Settlement Administrator, and its direct-U.S. mail

14   dissemination efforts resulted in "about 94%" of class members receiving notice.  *Id.*  Also there, as

15   here, "even members who did not receive notice are still eligible to receive settlement payments since

16   payment is automatic and no claim form is required."  *Id.* (citation omitted).  And there, as here, the

17   Settlement Administrator set up a website and phone line for class members.  *Compare id.* at *5, *with*

18   Lucchesi Decl., ¶¶ 10-11.  Further, in both matters, the Settlement Administrator provided CAFA

19   notice.  *Compare id.* at *5, *with* Lucchesi Decl., ¶¶ 3-5.  Thus, in this case, as in *Shelby*, "the notice given

20   was reasonably calculated to notify Class members of the proposed settlement under Rule 23(c)."  2017

21   WL 6347090, at *5.

22   **C.     Plaintiffs meet the requirements for class certification.**

23         Certification of the Settlement Class is apt, as the Court has preliminarily recognized.  There is

24   one type of product at issue (a package of Enhanced Autopilot features for certain Tesla vehicles), an

25   alleged course of conduct common to all class members, and only economic damages at stake.  In a

26   situation such as this, where the proposed class seeks only economic damages (as distinct from a class or

27   classes seeking individualized personal injury and future-injury damages), and where the Court, after

28

careful consideration, already has certified the settlement class conditionally, Prelim. Appr. Order, ¶¶ 4-7,

final certification of the settlement class is eminently proper. *E.g.*, *Hanlon*, 150 F.3d at 1019-23.

### 1. The Rule 23(a) requirements are met.

In order to merit class certification, Plaintiffs must show at the outset that the class is so

numerous that joinder is impracticable; questions of law or fact are common to the class; the claims of

the representative plaintiffs are typical of the claims of the class; and the proposed class representatives

will protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a). Plaintiffs meet these

prerequisites, as recognized by way of the Court's grant of preliminary approval, Dkt. No. 49, ¶ 6,

following briefing and a hearing. *See Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *5 (N.D.

Cal. Jan. 23, 2017) (referring to order granting preliminary approval and stating: "The Court is unaware

of any changes that would alter its analysis, and thus sees no reason to revisit the analysis of Rule 23.")

(citation omitted). Nonetheless, for the sake of completeness, Plaintiffs re-address these issues.

#### a. Numerosity

The Settlement Class consists of 32,410 members. (Lucchesi Decl., ¶ 9.) Accordingly, "joinder

of all members is impracticable," to say the least. Fed. R. Civ. P. 23(a)(1). Thus, the requirement of

numerosity is easily satisfied here. *See, e.g.*, *Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor v. I.N.S.*,

306 F.3d 842, 869 (9th Cir. 2002) (noting that numerosity requirement has been satisfied in cases

involving 39 class members); NEWBERG ON CLASS ACTIONS § 3:12 nn. 7-10 (citing several authorities

indicating that 40 or more class members, and sometimes less, is sufficient to indicate numerosity).

#### b. Commonality

As one court has summarized:

> Commonality requires the existence of questions of law or fact that are common to the
> class. Fed. R. Civ. P. 23(a)(2). Commonality focuses on the relationship of common
> facts and legal issues among class members. *See, e.g.*, 1 William B. Rubenstein, *Newberg on
> Class Actions* § 3:19 (5th ed. 2011). Courts construe this requirement permissively.
> *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). "All questions of fact and
> law need not be common to satisfy the rule. The existence of shared legal issues with
> divergent factual predicates is sufficient, as is a common core of salient facts coupled
> with disparate legal remedies within the class." *Id.* In fact, it only takes one common
> question of fact or law shared between proposed class members to satisfy commonality.
> *Dukes*, 131 S. Ct. at 2556.

*Marilley v. Bonham*, 2012 WL 851182, at *4 (N.D. Cal. Mar. 13, 2012).  Here, Plaintiffs' allegations raise numerous common questions.

Among them are:

    a.    Whether the Defendant misrepresented the features of its automobiles that were available upon delivery through its common representations, including its website and ordering system;

    b.    Whether the vehicles had inoperable Enhanced Autopilot and standard safety features at the time of delivery;

    c.    Whether Tesla's conduct violates consumer protection statutes, false advertising laws, sales contracts, and other laws as asserted in the Complaint;

    d.    Whether Plaintiffs and proposed class members overpaid for their Enhanced Autopilot systems; and

    e.    Whether Plaintiffs and other putative class members are entitled to damages and other monetary relief for the delay in operability of the Enhanced Autopilot and standard safety features, and, if so, in what amount.

As illustrated by these questions, commonality is satisfied "because the key issues in the case are the same for all class members." *Jacob v. Pride Transp., Inc.*, 2018 WL 1411136, at *3 (N.D. Cal. Mar. 21, 2018).

### c.    Typicality

Typicality is met as well.  "'[A] finding of commonality will ordinarily support a finding of typicality.'" *Taylor v. Universal Auto Group I, Inc.*, 2014 WL 6654270, at *13 (W.D. Wash. Nov. 24, 2014) (citations omitted).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class.  The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

*Burden*, 2013 WL 1190634, at *5 (citation omitted).  Here, the interests of the Plaintiffs and class members align fully.

Plaintiffs advanced the same claims as members of the Settlement Class they seek to represent, and they must satisfy the same legal elements that Settlement Class Members must satisfy.  They share

1    identical legal theories with putative Settlement Class Members, based on allegations that the Defendant

2    violated the law by its delayed delivery of EA features.  Their alleged injuries are the same, too; like

3    others in the proposed class, Plaintiffs allege that they paid up front for features that were not functional

4    when their cars were delivered to them.  Thus, Rule 23(a)(3) is satisfied.

5            **d.**    **Adequacy**

6    Finally, it must be determined whether the named plaintiffs "will fairly and adequately represent

7    the interests of the class." Fed. R. Civ. P. 23(a)(4*)*.  "In making this determination, courts must consider

8    two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other

9    class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

10    behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation

11    omitted).  Plaintiffs answer both of these questions in the affirmative and, therefore, meet this

12    requirement as well.

13    First, Plaintiffs' claims are co-extensive with members of the proposed Settlement Class.  All

14    have an identical interest in establishing the Defendant's liability, and each has been injured in the same

15    manner.  All assert the same legal claims, and all seek identical relief.  There is no conflict among them.

16    Also, each Plaintiff agreed to assume the responsibility of representing the class, and each has

17    made himself available to do so, including by way of assisting with the drafting of complaints, consulting

18    with counsel during the course of this litigation, monitoring the course of this case, and consulting with

19    counsel regarding proposed terms of settlement.  (*See* Loeser Prelim. Appr. Decl. ¶¶ 5, 10, 15-16; *see also*

20    *generally* Dkt. Nos. 57-61 (named plaintiff declarations).)

21    Second, as discussed in counsel's declaration and as illustrated in counsel's resume and

22    biographies, Class Counsel have extensive experience and expertise in prosecuting complex class actions,

23    including commercial, consumer, and product defect actions.  (*See* Loeser Prelim. Appr. Decl., Ex. D.)

24    Counsel have pursued this litigation vigorously, and throughout they have remained committed to

25    advancing and protecting the common interests of all members of the class.  (*Id.*, ¶¶ 2-7, 10, 15, 19.)

26    Rule 23(a)(4) is satisfied.

27

28

1
2

**2.      Because common questions predominate, and a class action is the superior method to adjudicate class members' claims, the Court should certify the proposed Rule 23(b)(3) Settlement Class.**

3

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of

4

the subparts of Rule 23(b) also is satisfied.  Here, Rule 23(b)(3) is satisfied.

5

Rule 23(b)(3) is satisfied because questions common to class members predominate over

6

questions affecting only individual class members, and the class action device provides the best method

7

for the fair and efficient resolution of class members' claims.  Although defendants continue to deny that

8

common issues predominate, defendants do not oppose final class certification for purposes of giving

9

effect to the parties' settlement.  When addressing the propriety of class certification, the Court should

10

consider the fact that, in light of the Settlement, trial will now be unnecessary, such that the

11

manageability of the class for trial purposes is not relevant to the Court's inquiry.  *E.g.*, *Hanlon*, 150 F.3d

12

at 1021-23.

13

**a.      Common questions predominate.**

14

Rule 23(b)(3) requires an examination of whether "questions of law or fact common to the

15

members of the class predominate over any questions affecting only individual members . . . ."  "The

16

Ninth Circuit has held that 'there is clear justification for handling the dispute on a representative rather

17

than an individual basis' if 'common questions present a significant aspect of the case and they can be

18

resolved for all members of the class in a single adjudication.'"  *In re Qualcomm Antitrust Litig.*, 2018 WL

19

4680214, at *11 (N.D.Cal., 2018) (citing *Hanlon*, 150 F.3d at 1022 (citation omitted)).  Therefore, "[w]hen

20

'one or more of the central issues in the action are common to the class and can be said to predominate,

21

the action may be considered proper under Rule 23(b) . . . ."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

22

1036, 1045 (2016) (citation omitted).  "The ultimate predominance question is 'whether the common,

23

aggregation-enabling, issues in the case are more prevalent or important than the non-common,

24

aggregation-defeating, individual issues.'"  *Qualcomm*, 2018 WL 4682014, at *11 (citing *Tyson*, 136 S. Ct. at

25

1045 (internal citation omitted)).

26

Put another way, "the predominance inquiry 'simply tests whether questions common to the

27

class are more prevalent or important than individual ones, a standard which is readily met in consumer

28

class actions.'"  *Jacob*, 2018 WL 1411136, at *3 (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679,

1   690 (9th Cir. 2018)).  (While *Hyundai* may no longer be cited as precedent in light of the Ninth Circuit's

2   intervening grant of *en banc* rehearing, *In re Hyundai & Kia Fuel Econ. Litig.*, 897 F.3d 1003 (9th Cir. 2018),

3   the proposition cited by this Court in *Jacobs* is good law—the *Hyundai* court relied upon *Amchem Prods. v.*

4   *Windsor*, 521 U.S. 591, 625 (1997), for the quoted proposition.)

5        Here, common questions predominate.  These shared questions include whether the Defendant

6   misrepresented the timing of its release of the features at issue and whether Plaintiffs and the putative

7   class members overpaid for their cars because certain features were not available at the time of delivery.

8   These common questions predominate over any issues affecting only individuals.

9        Also, the fact that Plaintiffs invoked several states' laws in their complaint does not defeat

10   predominance, even as they seek certification of a nationwide Settlement Class.  At the preliminary

11   approval hearing, the Court raised concerns in light of *Hyundai*.  But, as stated above, the case may no

12   longer be cited as precedent.  897 F.3d at 1007.

13        Further, unlike in *Hyundai*, this Court has not declined to perform a choice-of-law analysis

14   because no one has asked it to perform one; neither the Defendant or any objector has argued

15   extensively about any differences among state consumer-protection laws; and this Court has made no

16   "tentative ruling that predominance was lacking on the basis of differing state laws."  *See In re Anthem,*

17   *Inc. Data Breach Litig.*, 2018 WL 3872788, at *8 (N.D. Cal. Aug. 15, 2018).  In fact, no one has challenged

18   the appropriateness of the proposed Settlement Class on the basis of possible variations among state

19   laws.

20        This makes sense because the Supreme Court itself has observed that "the predominance

21   standard is 'readily met' in consumer class actions."  *Id.* (citing *Amchem*, 521 U.S. at 624).  Furthermore,

22   "[t]he Ninth Circuit has made clear" in longstanding authority that "'[v]ariations in state law do not

23   necessarily preclude a [nationwide] 23(b)(3) action' because sometimes 'the idiosyncratic differences

24   between state consumer protection laws are not sufficiently substantive to predominate over the shared

25   claims.'"  *Id.* (citing *Hanlon*, 150 F.3d at 1022-23).

26        Such is the case here.  Plaintiffs' claims are simple counts that look to the legality of the

27   Defendant's behavior (including uniform representations to class members); whether class member

28   vehicles had missing or inoperable features (which is objectively provable); and whether Plaintiffs and

1    class members were damaged (or owed restitution) as a result.  (*See generally* Dkt. No. 24, ¶¶ 121-341.)

2    Therefore, "because the common issues turn on a common course of conduct by the defendant, '[a]

3    common nucleus of facts and potential legal remedies dominates this litigation.'"  *Id.* at 10 (citing *Hanlon*,

4    150 F.3d at 1022).

5           Predominance is met.

6                  **b.     Class treatment is the superior method for adjudicating claims of members**
                            **of the proposed Settlement Class.**

7

8           As for the requirement in Fed. R. Civ. P. 23(b)(3) that the class action be "superior to other

9    available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the

10   fair and efficient resolution of all Settlement Class Members' claims.  Given that Plaintiffs are aware of

11   thousands of class members sharing common issues, the class device is the most efficient and fair means

12   of adjudicating all these many claims.  Class treatment is far superior to thousands upon thousands of

13   individual suits or piecemeal litigation; in this matter, it will fulfill its function of conserving scarce

14   judicial resources and promoting the consistency of adjudication.  Accordingly, the superiority aspect of

15   Rule 23(b)(3) is readily met.

16   **D.    Objections**

17          **1.     Yost objection**

18          Mark Yost, a lawyer appearing *pro se*, Dkt. No. 53 at 2 n.1, objects to the Settlement "in so far as

19   the putative incentive award for the Class Representatives is significantly higher for those representatives

20   than the class at large."  (*Id.* at 1.)  According to Mr. Yost, "[t]his disparity leads to a real conflict of

21   interest because the representatives so exceed the remainder of the class that there is a serious question

22   as to whether the class representatives could fairly evaluate the settlement being offered the remaining

23   class."  (*Id.*)  This objection is groundless and without merit.

24          In his objection, Mr. Yost ignores the risks of further litigation, the presence and aid of a well-

25   respected neutral in negotiating the Settlement, the fact that Tesla has already rolled out most of the EA

26   features (albeit belatedly) and has re-pledged to provide the remaining ones, and the fact that the

27   Plaintiffs provided real service to the Settlement Class.  (*See* Dkt. Nos. 56-61.)  Instead of reckoning with

28   the actual terms of the Parties' agreement and the circumstances of the case, Mr. Yost has chosen

1   instead to impugn the integrity of the Plaintiffs by speculating that "the only reason the class

2   representatives have to agree to [the Settlement] is that they are being almost fully whole again, where

3   the remainder of the class is receiving a [*sic*] most 5% of what they are receiving, and in most cases, less

4   than ½% of what they are receiving." (Dkt. No. 53 at 3.) But Mr. Yosts's aspersions are completely

5   without foundation, and thus he has failed to meet his burden as an objector. *E.g.*, *LinkedIn*, 309 F.R.D.

6   at 592 (noting that "objectors to a class action settlement bear the burden of proving any assertions they

7   raise challenging the reasonableness of a class action settlement.") (citing *United States v. Oregon*, 913 F.2d

8   576, 581 (9th Cir. 1990)).

9        Far from being cause for denying final approval to a settlement, in the Ninth Circuit, "[i]ncentive

10   awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir.

11   2009) (citing 4 Alba Conte *et al.*, Newberg on Class Actions § 11:38 (4th ed. 2008)). These awards are

12   intended to "compensate class representatives for work done on behalf of the class, to make up for

13   financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

14   willingness to act as a private attorney general." *Id.* at 958-59.

15        As for the sum of the awards sought here ($4,800 per Class Representative) versus the settlement

16   benefits available to all Settlement Class Members, $5,000 incentive awards are presumptively reasonable

17   in this district, even where there is the prospect of minimal damages recoveries by individual class

18   members. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving

19   $5,000 incentive awards where class members would receive roughly $12 in gift cards or cash); *Wren v.*

20   *RGIS Inventory Specialists*, 2011 WL 1230826, at *31-37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 service

21   awards to 20 named plaintiffs where "average award to class members [was] $207.69"); *see also Weeks v.*

22   *Kellogg Co.*, 2013 WL 6531177, at *3, 34-37 (C.D. Cal. Nov. 23, 2013) (approving incentive awards of

23   $5,000 per named plaintiff, where settlement provided for the recovery by class members of $5 per box

24   of cereal purchased during the class period, up to a maximum of $15 per class member, all subject to

25   proportional reduction if all eligible claims exceeded the settlement fund).

26        Here, Plaintiffs seek service awards for the Class Representatives because each devoted

27   considerable time and effort to this case, including by way of assisting counsel with counsel's

28   investigation and analysis of their claims, preparation of pleadings, settlement negotiations and

considerations, and review and analysis of the parties' settlement papers.  (*See* Dkt. Nos. 56-61.)  The requested incentive awards are designed to compensate the Class Representatives for their work on behalf of the class, without whom the absent class members would have recovered nothing at all.  The incentive awards do not reflect a Class Representative's potential *damages,* and so a comparison to a compromise with respect to potential damages is inapt.

Mr. Yost invokes *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157 (9th Cir. 2013), in support of his objection.  And while he claims "striking similarity" between the sums discussed in that case and the sums here at issue, he willfully ignores (even as he quotes a reference to it) the critical problem the *Radcliffe* court addressed: "the conflict of interest caused by the conditional incentive awards."  (Dkt. No. 53 (quoting *Radcliffe*, 715 F.3d at 1165).)

The Ninth Circuit recognized this critical distinction in *Online DVD-Rental*.  There, the Court affirmed final approval of a settlement where Class Representatives received $5,000 service awards in recognition of their efforts on behalf of the class, and settlement class members received approximately $12 each in cash or gift cards.  779 F.3d at 947-48.  The case was unlike *Radcliffe* because there were no conflicts, and the plaintiffs maintained a sufficient interest in, and nexus with, the class so as to ensure vigorous representation.  *See id.* at 943 (citation omitted).

The same can be said of this case.  As with the *Online DVD-Rental* matter:

> This case does not involve an *ex ante* incentive agreement between the class representatives and class counsel, which we criticized in *Rodriguez*, 563 F.3d at 958–60. Nor does it involve a settlement which explicitly conditioned the incentive awards on the class representatives' support for the settlement, as was the case in *Radcliffe v. Experian Information Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir.2013). In this case, as in *Cobell,* the class settlement agreement provided no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court. *Cobell,* 679 F.3d at 922. The amount sought and awarded was relatively small, well within the usual norms of "modest compensation" paid to class representatives for services performed in the class action. *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1080 (7th Cir.2013). Indeed, we approved an identical incentive fee in *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir.2000) . . . .

*Id.*

So, as was done in *Online DVD-Rental*, the Court should overrule the very same objection brought by Mr. Yost here.  *See also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3616638, at *11 (N.D.

1   Cal. June 26, 2017) ("Plaintiffs have confirmed that the service awards in this case neither involve an *ex*

2   *ante* agreement between the class representatives and class counsel nor are conditioned on the class

3   representatives' support for the settlement. *See id.* (distinguishing *Rodriguez*, 563 F.3d at 963, and *Radcliffe*

4   *v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013)).").

5           **2.      Haines "objection"**

6           As for the second objection, Douglas Haines indicates that he "decline[s] to participate in this

7   suit and object[s] to *it*." (Dkt. No. 54 (emphasis added).)  His objection is not actually to the

8   compromise before this Court, therefore, but rather, the lawsuit underlying it.  Mr. Haines offers his

9   suspicion that "the real reason for this suit is to obstruct and delay progress by Tesla toward a fossil fuel

10  free system of transport."  (*Id.*)

11          Mr. Haines' submittal, however sincere it may be, is not a true objection for purposes of deciding

12  whether the Court should grant final approval of the Settlement.  The court in *Shea v. Kahuku Hous.*

13  *Found., Inc.*, 2011 WL 1261150 (D. Haw. Mar. 31, 2011), faced a similar situation:

14          Mr. Tsukazaki stated that, after the distribution of the new hearing date, he received
        some inquiries from residents of the Project who did not wish to participate in the
15      settlement. Mr. Tsukazaki directed each of them to write a letter stating his or her
        position. Eight residents of the Project submitted such letters, and Plaintiffs' counsel
16      filed them on March 14, 2011. [Dkt. no. 69.] In addition, at the hearing, *Plaintiffs' counsel,
        Mr. Geminiani, represented that he spoke to two of the eight residents, including the resident who drafted
17      a form letter that seven of the residents signed and submitted a copy of to Mr. Tsukazaki. Mr.
        Geminiani stated that the seven residents have a philosophical disagreement with resolving a dispute with
18      the Project management through litigation. They did not object to either the terms of the settlement or the
        representation provided by Class counsel.*
19
    *Id.* at *3 (emphasis added).
20
            In *Shea*, the putative objectors evidently presented no authority in support of their "philosophical
21
    disagreement."  *See id.*  Likewise here, Mr. Haines presents no authority in support of what is also a
22
    philosophical disagreement with Plaintiffs' suit.
23
            Mr. Haines plainly received notice of the Settlement, yet he has not filed a true objection to the
24
    compromise, and certainly none on cognizable grounds.  Respectfully, his submittal should not stand in
25
    the way of final approval.  *See id.* at *9 ("Finally, although Plaintiffs have presented evidence that eight
26
    Class Members do not wish to participate in the settlement, the Court notes that none of those Class
27
    Members expressed any objections to either the terms of the settlement or the representation that
28

counsel has provided to the Class.  The Court therefore FINDS that no Class Member objects to this settlement, and this is further support for the Court's conclusion that the settlement is fair, reasonable, and adequate.").

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask that the Court grant final approval of the Parties' Settlement, and that it also grant the further relief requested herein.  Plaintiffs present a proposed form of order and judgment with the instant motion and memorandum.

DATED: October 5 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP


By ____/s/ Thomas E. Loeser_____
        Thomas E. Loeser
Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on October 5, 2018, I electronically transmitted the foregoing document to

3

the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of

4

Electronic Filing to all ECF registrants.

5

6

                         By        */s/ Thomas E. Loeser*
                                THOMAS E. LOESER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28