**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DEAN SHEIKH, ET AL.,<br><br>        Plaintiffs,<br><br>v.<br><br>TESLA, INC.,<br><br>        Defendant. | Case No. 17-cv-02193-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING PLAINTIFFS' MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES, AND COSTS AND EXPENSES**<br><br>[Re: ECF 55, 63] |

On October 17, 2018, the Court heard (1) Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF 63) and (2) Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses (ECF 55). For the reasons discussed below, the motions are GRANTED.

**I.  BACKGROUND**

In October 2016, Defendant Tesla, Inc. ("Tesla"), a commercial seller of battery-powered electric vehicles, announced it would release Enhanced Autopilot for certain of its Hardware 2 ("HW2") vehicles, which consumers could purchase for $5,000. *See* Second Am. Class Action Compl. ("SAC") ¶¶ 35–36, ECF 24. Enhanced Autopilot added new capabilities to Tesla's existing Autopilot function. At the time of its release of Enhanced Autopilot, Tesla represented that the software for these features was "expected to complete validation and be rolled out to your car via an over-the-air update in December 2016, subject to regulatory approval." *Id.* ¶ 40. Tesla began rolling out Enhanced Autopilot features to the vehicles (via remote updates) in January 2017. *See id.* ¶ 34. Over the next several months, the features were improved and augmented, with substantially all promised features delivered by September 2017. *See* Prelim. Appr. Mot. at 4, ECF 43. All of the HW2 vehicles were also to be equipped with standard safety features, which Tesla represented would "become available in December 2016." *See* SAC ¶ 2. The safety

features were rolled out beginning in January 2017, and the rollout was substantially completed in May 2017. *See* Prelim. Appr. Mot. at 4.

Plaintiffs are residents of several different states and each purchased or leased an HW2 vehicle, as well as the optional $5,000 Enhanced Autopilot package. *See* SAC ¶¶ 8, 11, 14, 17, 26. When they received their vehicles in December 2016, the standard safety and Enhanced Autopilot features were not yet operational. As of May and September 2017, the standard safety and Enhanced Autopilot features, respectively, were substantially fully operational. *See* Prelim. Appr. Mot. at 5. Because they did not receive these features by December 2016, Plaintiffs brought this putative class action law suit, asserting claims individually and on behalf of others who purchased Tesla vehicles with Enhanced Autopilot under California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), California common law, and, in the alternative, consumer protection and common law claims under the laws of the states of each of the named Plaintiffs. *See generally* SAC.

After Plaintiffs filed two amended complaints and engaged in preliminary discovery, the parties agreed to engage in early mediation on November 2, 2017. *See* Decl. of Thomas. E. Loeser ISO Prelim. Appr. Mot. ¶¶ 2–3, ECF 44. The parties reached the contours of a settlement agreement on that date and reached a final settlement on April 27, 2018. *Id.* ¶ 5. On June 8, 2018, the Court granted Plaintiffs' motion for preliminary approval of class action settlement and set a fairness hearing for October 17, 2018. *See* Order Granting Preliminary Approval ("Prelim. Order"), ECF 50.

The Agreement defines the "Settlement Class" as:

> All U.S. residents who purchased Enhanced Autopilot in connection with their purchase or lease of a Tesla Hardware 2 Model S or Model X vehicle delivered to them on or before September 30, 2017.

Agreement § I.A, ECF 44-1.

Under the Agreement, Defendants have agreed to provide a Settlement Fund in the amount of $5,415,280. *Id.* § II.A.1. The Settlement Fund will be used to pay any attorneys' fees and costs, any service awards to the class representatives, and payments to the settlement class members, but settlement notice and administration costs shall be paid separately by Tesla. *Id.* Any

residual amount after the second attempted distribution of funds to class members will be donated to the Ohio State University Center for Automotive Research and/or Texas A&M Transportation Institute, Center for Transportation Safety. *Id.* § IV.3. Each class member will be paid a portion of the fund based on a combination of the following: (1) Tesla's representations regarding the timing of the release of the Enhanced Autopilot features as of the date the Settlement Class Members ordered their vehicles, (2) the timing and content of Tesla's Enhanced Autopilot software releases, and (3) the date that the Settlement Class Members took delivery of their vehicles. *Id.* §§ II.B; IX.C.

The Settlement Administrator provided notice to the 32,410 class members via direct mail on July 23, 2018. *See* Decl. of Lana Lucchesi ISO Final Appr. Mot ¶¶ 7–8, ECF 65. The Settlement Administrator also maintained a toll-free phone number and website to provide notice. *Id.* ¶¶ 10–11. The Settlement Administrator represents that the notice by mail reached 98.61% of all class members and the phone number received 195 calls. *See id.* ¶¶ 10–11. The Settlement Administrator received 94 requests for exclusion[1] and no objections. *See id.* ¶¶ 12–13. Two objections were filed with the Court.

On October 17, 2018, the Court heard Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses. The Court indicated on the record that both motions would be granted.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In order to grant final approval of the class action settlement, the Court must determine that (1) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the

---

[1] On September 4, 2018, the Court received a letter from Mr. Bernard Gonzalez asking to be excluded from the class action settlement. *See* ECF 67. At the final approval hearing, defense counsel represented that Mr. Gonzalez is included in the Settlement Administrator's exclusion list. Final Appr. Hearing Tr. at 3:5–8, ECF 70.

3

settlement.").

**A. The Class Meets the Requirements for Certification under Rule 23**

A class action is maintainable only if it meets the four requirements of Rule 23(a):

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Prelim. Order. The Court is not aware of any new facts which would alter that conclusion. However, the Court reviews the Rule 23 requirements again briefly, as follows.

Turning first to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that because the class contains 32,410 members, joinder of all class members would be impracticable. *See* Lucchesi Decl. ¶ 9. The commonality requirement is met because the key issue in the case is the same for all class members, namely whether Tesla's conduct with respect to its representations and delivery of the features violated consumer protection statutes, false advertising laws, sales

4

contracts, and other laws as asserted in the complaint. Plaintiffs' claims are typical of those of the class, as they advance the same claims, share identical legal theories, and experienced alleged delayed delivery and insufficient functionality of the features. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest which would preclude Plaintiffs from acting as class representatives.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The primary common question in this case—whether Tesla's conduct with respect to its representations and delivery of the features violated consumer protection statutes, false advertising laws, sales contracts, and other laws as asserted in the complaint—predominates. Given that commonality, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate. Dean Sheikh, John Kelner, Tom Milone, Daury Lamarche, and Michael Verdolin are hereby appointed as class representatives and the Steve W. Berman, Thomas E. Loeser, and Robert F. Lopez of Hagens Berman Sobol Shapiro LLP are appointed class counsel.

**B.     The Settlement is Fundamentally Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class

5

settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026–27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### 1. Notice was Adequate

The Court previously approved Plaintiffs' plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* Prelim. Order. Prior to granting preliminary approval, the Court examined carefully the proposed class notice and notice plan and determined that they complied with Federal Rule of Civil Procedure 23 and Due Process. *Id.* ¶ 9. Plaintiffs have provided a declaration of the Settlement Administrator describing implementation of the notice plan. *See* Lucchesi Decl. The Court has summarized the key portions of those declarations in section I, above. Based on those declarations, it appears that at least 98.61% of all class members received notice through direct postal mail. *See id.* ¶ 10–11. Moreover, the Settlement Administrator established both a telephone number and website to supply notice. *See id.* "[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL

6

1  3623734, at *4 (N.D. Cal. June 26, 2017). The Court is satisfied that the class members were
2  provided with the best notice practicable under the circumstances, and that such notice was
3  adequate.

### 2. Presumption of Correctness

Before discussing the *Hanlon* factors, the Court notes that "[a] presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)). The settlement in this case was the result of arms-length negotiations between experienced counsel with the aid of a respected mediator. *See* Loeser Prelim. Appr. Decl. ¶¶ 4–8. While there was no formal discovery, Plaintiffs' counsel has submitted a declaration describing the pre-suit investigation and informal discovery which was conducted. *Id.* ¶¶ 2–5, 15; Decl. of Thomas E. Loeser ISO Fee and Service Award ¶ 7, ECF 56; Decl. of Thomas E. Loeser ISO Final Appr. Mot. ¶ 2, ECF 64)

The Court therefore concludes that on this record a presumption of correctness applies to the class action settlement.

### 3. *Hanlon* Factors

Turning to the *Hanlon* factors, the Court first considers the strength of Plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery (factor 1). While Plaintiffs' claims certainly appear viable on their face, Tesla raised a variety of defenses, including that it was transparent with its customers, that the release date was uncertain, and that its statements were not fraudulent, misleading, or capable of being reasonably relied upon. *See* Def. Memo. ISO Final Appr. at 10–11, ECF 66. Moreover, the case presented unique challenges in that the features were rolled out gradually, such that as time passed, Plaintiffs' claims lost strength. *See id.* at 11; Final Appr. Mot. at 11–12. Finally, Plaintiffs were aware that their class action allegations faced hurdles given variations in state law. Final Appr. Mot. at 12. With respect to the risk, expense, complexity, and duration of litigation (factor 2), Plaintiffs would likely have faced significant hurdles, including defense motions to dismiss, motions for summary judgment, and

opposition to class certification. *See id.* Litigation likely would have been protracted because although the case was filed in mid-2017, the pleadings have not yet been settled. Given the common questions of fact and law in this case, it is likely that the classes would have been certified had the case progressed, at least as to classes in states with comparable laws (factor 3).

The settlement recovery is substantial given the size of the class for a consumer class action case (factor 4). Under the terms of the Agreement, each class member who submits a valid claim will receive between $25 and $280. Plaintiffs cite cases in which settlements awarded comparable amounts to millions more consumers. *See* Final Appr. Mot. at 12–13. Given those figures, the recovery obtained under this settlement is significant.

Little formal discovery had been completed at the time of settlement, and the case is in its early stages (factor 5). However, Plaintiffs' counsel conducted pre-suit investigation, ongoing investigations leading to two amended pleadings, and informal discovery, and the case has been pending for over a year. Loeser Prelim. Appr. Decl. ¶¶ 2–5, 15. The Court is satisfied that the parties are sufficiently familiar with the issues in the case to have informed opinions regarding its strengths and weaknesses (factor 6). Class Counsel specialize in litigation of consumer class actions, and Tesla is represented by a well-respected law firm. Their views that the settlement is a good one is entitled to significant weight. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

There is no government participant (factor 7). However, the class reaction to the settlement is favorable (factor 8). There was only one true objection, which is discussed below.

Based on the foregoing reasons, and after considering the record as a whole as guided by the *Hanlon* factors, the Court finds that the settlement is fair, adequate and reasonable.

### C. Mr. Yost's Objection

The Court received two objections to the settlement. However, only the objection from Mr. Mark A. Yost substantively challenges the settlement. The other objection, from Mr. Douglas I. Haines, appears to be an objection to the lawsuit itself, rather than to the settlement terms. *See* ECF 54. In it, he states that he understood that the release of Tesla's Enhanced Autopilot features would take time and contends that Tesla should not be required to pay any money at all. *Id.* This

objection thus does not bar final approval.

Mr. Yost's objection, by contrast, substantively challenges the settlement terms. Mr. Yost argues that the disparity between the class representatives' incentive awards and the recovery of the individual class members is too great, such that it creates a conflict of interest between the representatives and the class. *See* ECF 53 at 1. Specifically, Mr. Yost argues that the class member awards of between $20 and $280 are only 0.5–5% of the class representatives' $4,800 award. *See id.* at 1, 3. To support his argument, Mr. Yost relies on the Ninth Circuit's decision in *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cit. 2013), in which the Ninth Circuit held that, in light of their conditional incentive awards, the class representatives did not adequately represent the absent class members.

The Court finds Mr. Yost's objection is without merit. Courts in the Ninth Circuit routinely approve settlements for incentive awards of $5,000 where the recovery of the individual class members is comparable or even less than is at issue here. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942–43, 947–48 (9th Cir. 2015) (approving $5,000 incentive awards where class members would receive roughly $12 in gift cards or cash); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *31–*37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 service awards to 20 named plaintiffs where "average award to class members [was] $207.69"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming settlement approval with $5,000 incentive fee).

In *In re Online-DVD*, the disparity between the incentive awards and the individual recovery was even greater than is at issue here. Nevertheless, the Ninth Circuit approved the awards based on the limited number of class representatives, the incentive awards' low values compared to the overall class recovery, and the amount of work the class representatives were required to complete in their roles. *See* 779 F.3d at 947–48. For these same reasons, approval is warranted here. And as the Court in *In re Online-DVD* held, *Radcliffe* is not to the contrary, as that case involved *conditional* incentive awards, which the class representatives could only recover if they approved of the settlement. *See Radcliffe*, 715 F.3d at 1164. No such condition exists here.

9

Further, as outlined by Plaintiffs' counsel, the named Plaintiffs devoted substantial time in assisting class counsel's investigation and analyzing the evidence in the case. They even served as field testers and reviewers of many of Tesla's updates to Enhanced Autopilot. *See* Loeser Decl. ¶¶ 15–16; Sheikh Decl. ¶¶ 3–8; Kelner Decl. ¶¶ 3–8; Milone Decl. ¶¶ 3–7; Lamarche Decl. ¶¶ 3–9; Verdolin Decl. ¶¶ 3–5.

Accordingly, the objections to final approval of the settlement are OVERRULED.

### D. CONCLUSION

For the foregoing reasons, and after considering the record as a whole (including Mr. Yost's objection) as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate and reasonable.

Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

## III. MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES, AND COSTS AND EXPENSES

Plaintiffs seek an award of attorneys' fees totaling $961,018.00, reimbursement of litigation costs and expenses in the amount of $14,981.95, and a service award of $4,800 for each class representative.

### A. Attorneys' Fees and Expenses

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Id.* Courts applying this method

"typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and

11

citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Plaintiff seeks an award of attorneys' fees totaling $961,018, which represents 17.7% of the $5.4 million gross Settlement Fund, as well as litigation expenses and costs in the amount of $14,981.95.

Addressing expenses first, the Court has no hesitation in approving an award in the requested amount of $14,981.95. Class Counsel have submitted an itemized list of expenses. *See* Loeser Final Appr. Decl. ¶ 16, Ex. B. The Court has reviewed the list and finds the expenses to be reasonable.

The Court likewise is satisfied that the request for attorneys' fees is reasonable. Using the percentage-of-recovery method, the Court starts at the 25% benchmark. *See Bluetooth*, 654 at 942. Plaintiffs' request only 17.7%, despite the exceptional results achieved, the risk of litigation, the fine quality of Class Counsel's work, and the contingent nature of the fee. A lodestar cross-check confirms the reasonableness of the requested fee, which amounts to a 2.36 multiplier of the lodestar. *See* Loeser Final Appr. Decl. ¶¶ 2, 6, Ex. A. "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases*." Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169 BTM NLS, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015). Thus, a multiplier of 2.36 is within the range of reasonableness.

Plaintiffs' motion for attorneys' fees and expenses is GRANTED. Plaintiff is awarded expenses in the amount of $14,981.95 and attorneys' fees in the amount of $961,018.

### B. Incentive Award

The class representatives request incentive awards in the amount of $4,800. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). The class representatives' participation in this case was substantial and was essential to obtaining the considerable monetary recovery which will be enjoyed by each class member. *See* Loeser Fee & Service Decl. ¶ 17. *See generally* ECF 57–61 (class representative declarations). Given the amount of work the representatives put into the case and the success of the recovery, an incentive award in the amount of $4,800 is proportional to the class members' recoveries, which will range between $25 and $280. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (district court must "consider the proportionality between the incentive payment and the range of class members' settlement awards.").

The Court concludes that the requested $4,800 incentive award is appropriate in this case.

## IV. ORDER

For the reasons discussed above,

(1) Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED; and

(2) Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses is GRANTED. Plaintiffs are awarded attorneys' fees in the amount of $961,018.00, costs and expenses in the amount of $14,981.95, and service awards in the amount of $4,800 per class representative.

Without affecting the finality of this Order and accompanying Judgment in any way, the Court retains jurisdiction over (1) implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties pursuant to the Settlement Agreement has been performed; (2) any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Settlement Agreement; and (3) all parties to this action and Settlement class members for the purpose of implementing and enforcing the Settlement Agreement. Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution

Accounting in accordance with this District's Procedural Guidance for Class Action Settlements.

**IT IS SO ORDERED.**

Dated: November 2, 2018

_____
BETH LABSON FREEMAN
United States District Judge